**PUBLIC CITIZEN HEALTH RESEARCH GROUP, Plaintiff,**

v.

**DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE et al., Defendants,**

**American Association of Professional Standards Review Organizations, Intervening Defendant.**

**Civ. A. No. 77–2093.**

United States District Court, District of Columbia.

April 25, 1978.

David C. Vladeck, Diane B. Cohn, Ted Bogue, Washington, D. C., for plaintiff.

A Patricia Frohman, Asst. U. S. Atty., Washington, D. C., Lynne K. Zusman, Thomas W. Hussey, Attys., Dept. of Justice, Civ. Div., Washington, D. C., for HEW.

John Lewis Smith, III, Lee T. Ellis, Jr., Lawrence Lewis Lamade, Baker, Hostetler, Frost & Towers, Washington, D. C., for defendant National Capital Medical Foundation, Inc.

Richard G. Vernon, William G. Kopit, Epstein & Becker, Washington, D. C., for intervening defendant American Assn. of Professional Standards Review Organizations.

## MEMORANDUM AND ORDER

GESELL, District Judge.

The primary issue presented by these cross-motions is whether or not defendant National Capital Medical Foundation, Inc. ("NCMF") is an "agency" for purposes of the Freedom of Information Act, 5 U.S.C. § 552(e) (1976), and thus subject to the disclosure provisions of that Act. The matter has been fully briefed and argued.

Plaintiff, Public Citizen Health Research Group ("Public Citizen"), is a nonprofit organization engaged in research and consumer advocacy on health and safety matters affecting Medicare and Medicaid patients in the District of Columbia. It seeks certain documents from NCMF or, alternatively, from the Department of Health, Education, and Welfare ("HEW"), a federal agency to which NCMF has certain statutory obligations, having been designated by HEW as a Professional Standards Review Organization ("PSRO") pursuant to 42 U.S.C. § 1320c-1 (Supp. V 1975).

NCMF and HEW have moved to dismiss or, alternatively, for summary judgment. They are joined by the American Association of Professional Standards Review Organizations, which was allowed to intervene as a defendant. Public Citizen has cross-moved for partial summary judgment. There are no material facts in dispute.

The PSRO program was instituted by Congress in 1972 "to promote the effective, efficient, and economical delivery of health care services of proper quality" in federally funded health care programs, most notably Medicaid and Medicare. *Id.* § 1320c. To this end, PSROs, such as defendant NCMF, are required to review health care provided to hospital patients covered by Medicaid and Medicare and to make final and binding determinations as to whether the care rendered was necessary and therefore qualified for federal reimbursement.

The origins of the PSRO program relate back to the establishment of Medicaid and Medicare. As early as 1965 Congress recognized the need to curb the delivery of unnecessary or needlessly expensive medical care in order to contain the cost of government-funded medical services. Medical services that were medically unnecessary were prohibited. *Id.* §§ 1395y(a)(1), 1396a(a)(30). Because very substantial health care funds are expended for inpatient hospital care, Congress sought to assure that health care provided by institutions was necessary and of adequate quality. The statute as initially enacted only required each hospital to form its own committee of physicians to oversee and control the utilization of services provided to Medicare and Medicaid patients within their institution. *Id.* §§ 1395x(k). However, this in-house system of review failed adequately to ensure that the care rendered Medicare and Medicaid patients met statutory standards of necessity and adequate quality.

When it became apparent to Congress that these internal review procedures were inadequate, amendments to the Social Security Act were proposed to establish local and regional regulatory physicians' groups charged with the duty to make appropriate reviews. Ultimately in 1972 Congress adopted the PSRO Amendments to the Social Security Act, Pub.L. No. 92–603, § 249F(b), 86 Stat. 1329 (1972), which created a comprehensive system of external monitoring of hospital-based health care delivery by PSROs. The Secretary of HEW was required to establish areas throughout the country within which PSROs would be designated. As soon thereafter as practicable, the Secretary was required to designate a qualified organization within each area as the PSRO. 42 U.S.C. § 1320c–1(a) (Supp. V 1975).

Federally designated PSROs such as NCMF operate under contract with HEW. In addition to other functions, they review the professional services rendered by practitioners and providers in their area to determine: (1) whether certain institutionally based services are medically necessary; (2) whether such services are of acceptable quality; and (3) whether appropriate care could be provided as effectively on an outpatient basis or more economically in a different type of inpatient facility. The purpose of these reviews is to determine if the services rendered were delivered in conformance with the applicable criteria. Reviews conducted by PSROs are relatively standardized, since all PSRO reviews must be based on regional norms of medical practice established for that area.

Under a system established by HEW, members of a PSRO routinely review Medicaid and Medicare patients in hospitals within the PSRO's jurisdiction. According to HEW requirements, PSROs must undertake four stages of review: (1) admission certification, (2) continued stay review, (3) medical care evaluation studies, and (4) profile analysis. HEW, PSRO Program Manual § 705, at VII–5 to VII–16 (1974) ("Program Manual").

Admission certification review concerns the medical necessity of hospital admissions. PSRO members generally review an admission during the first day of hospital stay to determine whether the patient needs to be hospitalized at all. Based on that review, members predict, or "assign," the appropriate length of the patient's stay. 42 U.S.C. § 1320c–4(a)(2) (Supp. V 1975); Program Manual § 705.1, at VII–5 to VII–10.

Continued stay reviews are conducted for patients who remain in the hospital beyond the expiration of their predicted stay. These reviews are made to determine whether continued hospitalization is in fact needed. Additional days may be assigned at this time, or, in the event that the PSRO concludes the additional stay is not "medically necessary," the PSRO can disapprove of continued hospitalization. 42 U.S.C. § 1320c–5(d) (Supp. V 1975); Program Manual § 705.2, at VII–10 to VII–13. In that event, once the patient has been notified that the PSRO deems his additional stay to be medically unnecessary, the patient must thereafter either leave the hospital or make private payment. Program Manual § 1905.-5, at XIX–5.

The PSRO statute provides that PSRO determinations with regard to the medical necessity, conformance to professional standards, and appropriateness of institutional setting of admissions and continued stays "shall constitute the *conclusive* determination of those issues . . . for purposes of payment under this Act." Medicare-Medicaid Anti-Fraud and Abuse Amendments, Pub.L. No. 95–142, § 5(d)(1), 91 Stat. 1175 (1977) (amending 42 U.S.C. § 1320c–7) (emphasis added). Reconsideration and eventual appeal of PSRO decisions to HEW is provided for by the PSRO statute under certain limited circumstances if the PSRO determination is adverse. However, favorable determinations by the PSRO as to medical necessity are binding on the payors and are never reviewed by HEW because they are not appealable. Indeed, the statute requires notice only of adverse PSRO determinations. All PSRO approvals are therefore final and binding on HEW. Approximately one percent of the hospital patients reviewed by NCMF during the first year of operation made claims which were disapproved. Thus, in nearly 99% of NCMF's cases, there was no possibility that the Secretary of HEW could review NCMF's decision of medical necessity.

Once a PSRO determines medical necessity, conformance to professional standards, and appropriateness of institutional setting, other matters in the exclusive province of HEW must be resolved. PSROs do not determine eligibility under the programs, coverage, or the reasonableness of charges. Yet the fact remains that in practically all cases benefits are not paid unless the PSRO makes its conclusive affirmative determinations of medical necessity.

In addition, of course, PSROs perform a variety of significant independent decisional functions supplementing the overall governmental program, such as evaluating care rendered groups of patients in respect to specific medical problems within HEW guidelines, developing criteria, and collecting data for governmental purposes. PSROs also perform profile analysis of individual doctors or hospitals to detect patterns of abuse and substandard care.

NCMF urges that it should not be treated as an "agency" for purposes of the Freedom of Information Act because of the following factors:

(1) Its relations with HEW are contractual.

(2) It was not established by federal law.

(3) Its employees are not civil servants or protected by the Federal Tort Claims Act.

(4) Its activities are largely advisory to HEW in its performance of what are essentially peer group monitoring functions.

(5) Most of its decisions are not binding.

(6) It is free to, and in fact does contract to perform various functions for state and city agencies and for private parties.

(7) HEW supervision is accomplished by regulations, not day-to-day control.

Thus NCMF presents itself in the guise of a consultant and points to the obvious fact that the Secretary of HEW is the person charged with ultimate responsibility for implementing the congressional purpose.

Whether or not NCMF is subject to the Freedom of Information Act depends on whether or not it fits the generalized definition of agency found in the Administrative Procedure Act ("APA"), *i. e.,* an "authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1) (1976). In *Washington Research Project, Inc. v. Department of HEW,* 164 U.S.App.D.C. 169, 504 F.2d 238 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975), the Court took cognizance of the varying arrangements Congress has designed for implementing governmental functions through private or quasi-private entities. Recognizing the "myriad organizational arrangements" adopted "for getting the business of the government done," it was forced to the "unavoidable fact" that each arrangement must be examined in its own context to determine whether or not it constitutes an "agency" within the term agency as defined in the APA. *Id.* 164 U.S.App.D.C. at 77, 504 F.2d at 246.

The Court held that while all factors must be weighed, "the important consideration is whether it has any authority in law to make decisions." As previously explained, NCMF has such authority and exercises it daily. Given this undisputable fact, which alone may be decisive, it also plays a crucial role requiring exercise of its independent decisional authority. These significant factors weigh heavily in this context. NCMF is financed by the United States, it is a creature of statute, it performs an executive function, and it operates under direct, pervasive, continuous regulatory control affecting even minutia of the procedures and functions. *See id.; Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067 (1970); *Grumman Aircraft Engineering Corp. v. Renegotiation Board,* 157 U.S. App.D.C. 121, 482 F.2d 710 (1973), *rev'd on other grounds,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975).

Considerable emphasis is placed on the undisputable fact that Congress sought to protect PSROs by statutory provisions designed to assure substantial confidentiality of their working records. Since, however, the Secretary of HEW retained discretionary authority over release of PSRO data and no flat exemption from the FOIA was enacted, these confidentiality provisions give way to FOIA standards. *American Jewish Congress v. Kreps,* 574 F.2d 624 (D.C.Cir. 1978).

The Court is well aware that the affidavits and attitudes of the medical profession strongly suggest that the peer review mechanism which Congress wisely established in enacting the PSRO program will experience a severe setback, if not fatal blow, should PSRO records become generally available through the FOIA. But the remedy for alleviating these justifiable concerns lies with Congress, not the courts.

Since NCMF must be deemed an agency, it alone is required to respond to plaintiff under the FOIA. At this juncture there has been no determination as to whether some or all of the documents sought are protected from disclosure by NCMF under the various statutory exemptions set out in the FOIA. This process must now be set into motion by remanding to NCMF for determination. While HEW has neither possession nor control of the records sought, its administrative processes for processing the request can and perhaps should be used and accordingly its motion to dismiss will not be granted.

Plaintiff's motion for partial summary judgment is granted, defendants' motions to dismiss are denied, and the case is remanded to NCMF and HEW for prompt processing of the plaintiff's FOIA request.

SO ORDERED.