IRWIN MEMORIAL BLOOD BANK OF THE SAN FRANCISCO MEDICAL SOCIETY, Appellant,

v.

AMERICAN NATIONAL RED CROSS, Appellee.

No. 79–4180.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1980.

Decided March 26, 1981.

David E. Willett, Hassard, Bonnington, Rogers & Huber, San Francisco, Cal., for appellant.

James Skelly Wright, Jr., Washington, D. C., argued for appellee; Howard T. Weir, Morgan, Lewis & Bockius, Washington, D. C., on brief.

Before ANDERSON and TANG, Circuit Judges, and MURRAY,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Appellant Irwin initiated this action in the lower court pursuant to the provisions of the Freedom of Information Act, 5 U.S.C. § 552. It sought an order requiring disclosure by appellee Red Cross of certain financial information. Red Cross defended by asserting that it was not an "agency" of the Federal Government within the mean-

ing of the FOIA. The controlling facts were not disputed, and cross-motions for summary judgment were made. Finding that Red Cross was not an "agency" as defined by 5 U.S.C. § 552(e), summary judgment was granted in favor of Red Cross, from which Irwin appeals. We affirm the lower court's decision.

Irwin strongly contends that this court should hold Red Cross subject to the requirements of the FOIA because it has generally been regarded as a federal agency and characterized as such by various state and federal government entities and officials, and by the Red Cross itself. Specifically, Irwin argues that Red Cross' ability to avoid the requirements of various state regulatory statutes because of its relationship with the federal government is entirely inconsistent with its assertion of non-agency status. In addition, Irwin directs us to the Supreme Court's decision in which the Red Cross was held to be "an instrumentality of the United States for purposes of immunity from state taxation. . . ." *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966).

Even though this argument is intuitively appealing, we think it misses the mark. It is significant that none of the above characterizations were made within the context of the FOIA. Because Congress has expressly defined those agencies to which the statute applies, the relevance of characterizations of an entity in different contexts is substantially diminished. The only issue before this court is whether the Red Cross is an "agency" for purposes of the Freedom of Information Act, 5 U.S.C. § 552.

Prior to November, 1974, the requirements of the FOIA were applicable only to "agencies" as defined in section 2(a) of the Administrative Procedure Act, 5 U.S.C. § 551(1). With certain specific exceptions not relevant to this discussion, section

* The Honorable William D. Murray, Senior United States District Judge for the District of Montana, sitting by designation.

551(1) defines "agency" to mean "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." Although this definition was viewed as unsatisfactory by most courts, a broad standard was eventually developed. In *Lombardo v. Handler*, 397 F.Supp. 792 (D.D.C.1975), aff'd, 546 F.2d 1043 (D.C.Cir.1976), *cert. denied*, 431 U.S. 982, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977), the court's reference to the legislative history of § 551(1) led to the following observation:

"The theme that runs through the legislative history of section 2 is that an administrative agency is a part of government which is 'generally independent in the exercise of [its] functions' and which 'by law has authority to take final and binding action' affecting the rights and obligations of individuals, particularly by the characteristic procedures of rule-making and adjudication."

*Id.* 397 F.Supp. at 795, quoting Freedman, *Administrative Procedure and the Control of Foreign Direct Investment*, 119 U.Pa.L. Rev. 1, 9 (1970); *see also, Washington Research Project, Inc. v. Dept. of Health, Education and Welfare*, 504 F.2d 238, 248, 248 n. 15 (D.C.Cir.1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). This concept of "substantial independent authority," therefore, was the focal point of analysis under § 551(1). *See Lombardo, supra*, 397 F.Supp. at 795 (and the cases cited therein).

On November 21, 1974, the Freedom of Information Act, 5 U.S.C. § 552, was amended to include § 552(e), which provides as follows:

"For purposes of this section, the term 'agency' as defined in section 551(1) of this title includes any executive department, military department, Government Corporation, Government controlled corporation; or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."

Irwin does not contend, nor do we think it could, that the Red Cross is an agency under § 551(1) as that section was interpreted by the courts. Rather, it argues that Red Cross' relationship with the federal government is sufficient to include it within the language of § 552(e) as either a government-controlled corporation, or other establishment in the executive branch of the Government.

It is true, as Irwin argues, that section 552(e) was intended to expand the definition of "agency" to include entities that may not have been considered agencies under the act prior to the amendment. On March 5, 1974, the Committee on Government Operations released its report on the proposed amendment. In pertinent part, it reads:

### "DEFINITION OF 'AGENCY'

"For the purposes of this section, the definition of 'agency' has been expanded to include those entities which may not be considered agencies under section 551(1) of title 5, U.S.Code, but which perform governmental functions and control information of interest to the public. The bill expands the definition of 'agency' for purposes of section 552, title 5, United States Code. Its effect is to insure inclusion under the Act of Government corporations, Government controlled corporations, or other establishments within the executive branch, such as the U.S. Postal Service.

"The term 'establishment in the Executive Office of the President,' as used in this amendment, means such functional entities as the Office of Telecommunications Policy, the Office of Management and Budget, the Council of Economic Advisers, the National Security Council, the Federal Property Council, and other similar establishments which have been or may in the future be created by Congress through statute or by Executive order.

"The term 'Government corporation,' as used in this subsection, would include a corporation that is a wholly Government-owned enterprise, established by Con-

gress through statute, such as the St. Lawrence Seaway Development Corporation, the Federal Crop Insurance Corporation (FCIC), the Tennessee Valley Authority (TVA), and the Inter-American Foundation.

"The term 'Government controlled corporation,' as used in this subsection, would include a corporation which is *not* owned by the Federal Government, such as the National Railroad Passenger Corporation (Amtrak) and the Corporation for Public Broadcasting (CPB)." (emphasis in original)

H.R.Rep.No.93–876, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 6267, 6274.[1] In its report dated October 1, 1974, the Committee of Conference modified this definition of "government controlled corporation" to exclude "corporations which receive appropriated funds but are neither chartered by the Federal Government nor controlled by it, such as the Corporation for Public Broadcasting." Joint Explanatory Statement of the Committee of Conference, Conference Report No. 93–1200, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 6285, 6293.

■ We think these examples furnish a helpful starting point and aid in the difficult task of discerning the limits of the Act's intended coverage. Nonetheless, the true extent of the Act's expanded coverage under section 552(e) is a matter to be developed by the courts on a case-by-case basis.

This decision-making process is an unavoidable consequence resulting from "the 'myriad organizational arrangements' adopted 'for getting the business of the government done.' " *Public Citizen Health Research Group v. Dept. of Health, Education and Welfare,* 449 F.Supp. 937, 940 (D.D.C.1978). Therefore, each arrangement must be examined in its own context. *Washington Research Project, supra,* 504 F.2d at 246.

Moreover, this vast diversity of organizational arrangements undermines the precedential value of prior decisions. The characteristics of separate entities may differ so drastically, both quantitatively and qualitatively, that no meaningful comparison between the two can be made. We recognize the shortcomings of this developmental process, and the fact that in some cases it is wholly inadequate in terms of the certainty and predictability of the Act's applicability, but this is the inherent and inevitable course we must follow.

■ Turning to the case at hand, Irwin argues that Red Cross is an agency within § 552(e) because it is either a Government controlled corporation, or other establishment in the executive branch of the Government. In the context within which the Red Cross operates, we think it is unnecessary to distinguish between the two because regardless of its label, be it a department, corporation, office, etc., a threshold showing of substantial federal control or supervision is required before an entity can

---

1. In this report the Committee noted that the Departments of Defense and Justice uniformly opposed virtually every proposal to strengthen and clarify the Act. H.R.Rep.No.93–876, *supra,* at 6275. It included in ⌐n appendix to its report the views of those departments. In pertinent part, the Justice Department's letter reads:

"[The proposed amendment] redefines an agency for purposes of this Act to include executive and military departments, Government owned or controlled corporations, any independent regulatory agency, or other establishment in the Executive Branch including the Executive Office of the President. We cannot determine from this language whether or not the Act would be extended to include groups such as: The American National Red Cross, the Girl Scouts of America,

National Academy of Sciences, the Veterans of Foreign Wars, or the Daughters of the American Revolution. Some clarification would seem appropriate."

[1974] U.S.Code Cong. & Ad.News 6276, 6281. All of these groups referred to in the Justice Department's letter are included in the list of organizations found in Title 36 of the U.S.Code, which is entitled "Patriotic Societies and Observances." 36 U.S.C. § 1 et seq. The complete absence of these organizations in the Committee's examples of entities subject to the FOIA suggests, albeit by way of negative implication, that these organizations were not intended to fall within the Act's coverage. We have chosen to footnote this information because its support of the decision we reach is not needed.

be characterized as "federal" for some purpose. *Forsham v. Harris*, 445 U.S. 169, 180–81, 100 S.Ct. 978, 984–85, 63 L.Ed.2d 293, 304 (1980); *Rocap v. Indiek*, 539 F.2d 174, 177 (D.C.Cir.1976); *Public Citizens, supra*, 449 F.Supp. at 941; *Lombardo, supra*, 397 F.Supp. at 802. It is the existence of this element of substantial federal control that distinguishes those entities that can be fairly denominated as federal agencies under the FOIA from the organizations whose activities may be described as merely quasi-public or quasi-governmental. It must be recognized that the requisite degree of federal control, however, is manifested in various forms and usually consists of a confluence of several "federal" characteristics. The cases just cited are illustrative.

In *Forsham v. Harris, supra*, one issue addressed by the Court was whether the information generated by the University Group Diabetes Program (UGDP) was subject to disclosure under the FOIA. The UGDP was funded solely by grants awarded by the National Institute of Arthritis, Metabolism and Digestive Diseases (NIAMDD), a federal agency statutorily authorized to award the grants. As a consequence of the awards, the NIAMDD exercised a certain amount of supervision over the funded activity. The Court decided that the UGDP was not an "agency," holding that a private recipient of a federal grant is not an agency under the FOIA "absent extensive, detailed, and virtually day-to-day supervision." 445 U.S. at 180, 100 S.Ct. at 984, 63 L.Ed.2d at 304.

In *Rocap v. Indiek, supra*, the court concluded that the Federal Home Loan Mortgage Corporation (FHLMC) is an agency subject to the requirements of the FOIA. The court found that the "substantial federal control over its day-to-day operations" marked the dividing line between it and similar organizations that were not intended to be included within the 1974 expansion. 539 F.2d at 177. Several characteristics of the FHLMC were deemed significant to the court's determination. The FHLMC is federally chartered, its board of directors consists solely of federal officers appointed by the President, it is subject to virtual day-to-day governmental supervision and control over its business transactions, and to federal audit and reporting requirements. The Corporation is expressly designated an "agency" and its employees are officers and employees of the United States, for a number of purposes. Furthermore, it is entitled to make and enforce such bylaws, rules, and regulations as may be necessary or appropriate to carry out the purposes and provisions of its enabling act. *Id.* at 180.

The National Capital Medical Foundation, Inc. (NCMF) was the entity under consideration in *Public Citizens Health Research Group v. Dept. of Health, Education and Welfare, supra*. The NCMF owed certain statutory obligations to HEW, having been designated by HEW as a Professional Standards Review Organization pursuant to 42 U.S.C. § 1320c–1 (Supp. V 1975). As such, it was required to review health care provided to hospital patients covered by Medicaid and Medicare and to make final and binding determinations as to whether the care rendered was necessary and therefore qualified for federal reimbursement. 449 F.Supp. at 938. Even though the 1974 amendments had long since been in operation, the court chose to rely on the definition provided by § 551(1). Therefore, the court concluded that the important consideration was whether NCMF had any authority in law to make decisions. The NCMF had such authority and exercised it daily. While believing that that fact alone may have been decisive, the court proceeded to identify other factors that we think are relevant to a determination under § 552(e). Specifically, the NCMF was financed by the United States, was a creature of statute, performed an executive function, and operated under "direct, pervasive, continuous regulatory control affecting even minutia of the procedures and functions." *Id.* at 941.

Finally, in *Lombardo v. Handler, supra*, the National Academy of Sciences was held not to be an agency under § 552(e). Many factors were offered to demonstrate the Academy's agency status. The Academy was established by Act of Congress and

reports thereto. It is obligated to perform investigations, etc. for the departments of the federal government upon request. Congress can restrict its real estate holdings. The Academy had been mentioned in several Acts of Congress which gave some legal significance to the reports or recommendations of the Academy. Approximately 75% of its income, amounting to over $40,000,000 in fiscal year 1974, was derived from contracts with the United States. The court rejected the contention that the Academy was an establishment in the executive branch, finding that "it neither functions under the President nor was it created by Congress or the President." 397 F.Supp. at 802. The court held it was not a government controlled corporation "for no significant control by the federal government has been shown." *Id.* Finally, it was "not an authority of the government nor [did] it perform government functions like an administrative agency." *Id.*

It is against this backdrop that we consider the characteristics and the federal connections of the Red Cross.[2] The origins of the American National Red Cross can be traced to a private organization incorporated as the American National Association of the Red Cross in 1881 under the laws of the District of Columbia. It was not until 1900, however, that this precursor organization acquired a government charter and its present name. The Red Cross' present charter dates from an Act of Congress in 1905. *See,* 36 U.S.C. § 1 *et seq.*

Membership in the American National Red Cross is open to all the people of the United States, its Territories, and dependencies, upon payment of the sums specified from time to time in the bylaws. 36 U.S.C. § 4a. The vast majority of its workers are volunteers. In fiscal year 1977, an estimated 1,441,364 persons engaged in Red Cross activities without compensation. The Supreme Court has noted that Red Cross employees are not employees of the United States. *Dept. of Employment v. United States, supra,* 385 U.S. at 360, 87 S.Ct. at 467. Those employees who receive compensation are covered by the organization's own pension plan and pay Social Security taxes.

The United States does not appropriate any funds to assist the Red Cross in implementing its charter powers and duties. Rather, the only federal money received by the Red Cross is in connection with various government contracts and specific purpose grants. For example, in fiscal year 1977, the Red Cross received approximately .39% of its total income from government contracts or grants. In fiscal years 1976 and 1975, the percentage was 1.56% and 1.36%, respectively. These contracts or grants involved such activities as the Indo-China Refugee Relief Program and Blood Research and Development Contracts and Grants. To meet its operating expenses, the Red Cross depends primarily upon private voluntary contributions and revenues generated by its blood services.

It is settled that government officials do not direct the everyday affairs of the Red Cross. *Dept. of Employment, supra,* 385 U.S. at 360, 87 S.Ct. 467. This does not mean, however, that it is totally free from federal supervision. The federal government, pursuant to 36 U.S.C. §§ 13, 15, has made buildings in the District of Columbia available to the Red Cross, but section 13 also provides that the buildings shall remain the property of the United States, and that the Red Cross is charged with the responsibility, the care, keeping, and maintenance of the buildings without expense to the United States. The Red Cross is required to make and transmit to the Secretary of Defense a report of receipts and expenditures of whatever kind, and the report is audited by the Department of Defense and forwarded to Congress. 36 U.S.C. § 6. The Department of Defense is reimbursed by the Red Cross for the costs of the audit. 36 U.S.C. § 7.

**2.** For the interested reader, a more detailed discussion of the Red Cross' origin, development, and operations can be found at Sturges, *The Legal Status of the Red Cross*, 56 Mich.L. Rev. 1 (1957). This reference is not intended to infer either the approval or disapproval by this court of the author's conclusions.

Moreover, some degree of federal control or supervision can be inferred from the power of appointment to the Red Cross' governing body which is vested in the President of the United States. The Board of Governors of the Red Cross consists of fifty members. Eight governors are appointed by the President, one of which shall act as the principal officer of the corporation. The remaining seven appointees "shall be officials of departments and agencies of the Federal Government, whose positions and interests are such as to qualify them to contribute toward the accomplishment of Red Cross programs and objectives." 36 U.S.C. § 5(a). Thirty governors are elected by the various local chapters at the national convention. 36 U.S.C. § 5(b). The remaining twelve positions are selected as members-at-large by the Board of Governors through an electoral process. 36 U.S.C. § 5(c).

The extent of federal control that derives from the use of public buildings, the financial reporting and auditing requirements, and the President's appointment power can not appropriately be assessed in a vacuum. The characteristics that indicate federal control must be viewed in connection with the factors that indicate the contrary. In addition to those factors previously mentioned, we must consider the specific purposes of the corporation as expressed in the enabling legislation, and the conditions it must comply with to retain its membership in the International Red Cross.

Broadly stated, the major purposes of the Red Cross are (1) to furnish *volunteer* aid to the sick and wounded of Armed Forces in time of war, in accordance with the spirit and conditions of the Geneva Conference and other similar treaties or conventions to which the United States has given its adhesion or may hereafter give its adhesion, and (2) to carry on a system of national and international relief in time of peace so as to mitigate the sufferings caused by pestilence, famine, fire, floods, and other great national calamities, and to devise and carry on measures for preventing the same. (emphasis added). 36 U.S.C. § 3.

Finally, it must be recognized that the American National Red Cross is a "national society" within the organizational framework of the International Red Cross. Sturges, *The Legal Status of the Red Cross*, 56 Mich.L.Rev. 1, 2 (1957). Among the conditions necessary for recognition by the International Committee of the Red Cross are: recognition by the organization's legal government as a Voluntary Aid Society; possession of autonomous status which allows it to operate in conformity with the fundamental principles of the Red Cross, as formulated by the International Red Cross Conference; availability of membership to any of its nationals regardless of race, sex, class, religion, or political opinions; and adherence to the fundamental principles of the Red Cross—"impartiality; political, religious and economic independence; the universality of the Red Cross and the equality of all National Societies." Handbook, I.R.C. 319–320; *see*, Sturges, *supra*, at 2–3 n.4.

As reflected by these conditions, a dominant concern of the Red Cross is that it be viewed by the peoples of the world as an institution which owes its primary allegiance, not to any nation or group of nations, but to the alleviation of human suffering. As The Honorable Basil O'Connor, Chairman, explained in the Annual Report of the American National Red Cross Corporation for 1946, ". . . the International Red Cross Committee has always maintained that the national societies, while cooperating closely and cordially with their own governments and with other agencies, should at the same time remain independent." *See*, Sturges, *supra*, at 12 n.30.

Viewing the Red Cross in its own context, as we must, and giving careful consideration to the various relevant factors that may indicate the requisite magnitude of governmental control, we are convinced that the Red Cross is an organization that was not intended to be included within the terms of the FOIA. The Red Cross is undoubtedly a close ally of the United States government, but its operations are not subject to substantial federal control or super-

vision. Therefore, the judgment of the district court is

AFFIRMED.