Mamie **WALTON, Individually and Michael L. Smith, personal representative of the Estate of Theodore Walton, Deceased, Plaintiffs,**

v.

**HOWARD UNIVERSITY T/A Howard University Hospital, and the American Red Cross (D.C. Chapter), Defendants.**

Civ. A. No. 87–1438.

United States District Court, District of Columbia.

Nov. 6, 1987.

---

3. A place where citizens often appear to petition their government.

Joel Skirble, Washington, D.C., for plaintiffs.

Bruce M. Chadwick, Washington, D.C., for defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

Defendant, The American Red Cross ("Red Cross"),[1] filed a Verified Petition for Removal ("Petition") from the Superior Court of the District of Columbia to this Court on May 20, 1987, in which defendant Howard University T/A Howard University Hospital ("Howard University") joined. Defendants base their petition on 36 U.S.C. § 2 (1982) and 28 U.S.C. § 1441(a), or alternatively, upon 28 U.S.C. § 1442(a)(1) (1982). After carefully considering the Red Cross' petition, plaintiff's opposition to it, and the entire record in this case, the court concludes that the petition should be dismissed for the reasons stated below, and that the case should be remanded to the Superior Court of the District of Columbia pursuant to 28 U.S.C. § 1447(c).

### I.

Defendants first rely upon the removal power under 28 U.S.C. § 1441(a) (1982), on the presumption that 36 U.S.C. § 2 (1982) provides a grant of original jurisdiction to federal district courts in suits to which the Red Cross is a party.[2] Under 28 U.S.C. § 1441(a), a civil action in any state court is removable by defendant(s) to the district court of the United States in the district and division where the action is pending, provided that the district courts have original jurisdiction over the action. The Red Cross has the "power to sue or be sued in courts of law or equity, State or Federal, within the jurisdiction of the United States ..." pursuant to 36 U.S.C. § 2. The question here is whether Congress created original jurisdiction in the federal courts by empowering the Red Cross to sue there.

In *Bank of the United States v. Deveaux*, the Supreme Court held that the statutory grant of the power to "sue and be sued ... in any courts of record, or any other place whatsoever" endowed the first Bank of the United States with the capacity to litigate, but did not enlarge the jurisdiction of any court. 9 U.S. (5 Cranch) 61, 85–86, 3 L.Ed. 38 (1809). Then, in *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 817, 6 L.Ed. 204 (1824), the Court held that a clause which gave the second Bank of the United States the power "to sue and be sued ... in all state courts having competent jurisdiction, and in any circuit court of the United States," amounted to a grant of original jurisdiction to the circuit courts. In light of those two cases, the Court later concluded that a clause which allowed the Texas and Pacific

---

1. Defendant Red Cross is a "local unit" of the national corporation, the American National Red Cross, under 36 U.S.C. § 4a (1982). The discussion which follows assumes an identity between defendant Red Cross and the national organization, since the bylaws of the national organization provide that the local chapters shall not be separate legal entities, Sturges, *The Legal Status of the Red Cross*, 56 Mich.L.R. 1, 16 n. 41 (1957) (citing bylaws, §§ 9.01, 9.07). Under the Code, the national organization may structure its relationship with the local chapters as it chooses. 36 U.S.C. § 4a (1982).

2. In matters not otherwise reserved to the states by the Constitution, that Congress may expand the original jurisdiction of the federal courts. *E.g., Lockerty v. Phillips*, 319 U.S. 182, 187–188, 63 S.Ct. 1019, 1022–1023, 87 L.Ed. 1339 (1943); 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, Moore's Federal Practice ¶ 0.60[9] (2nd ed. 1986). Congress may grant original jurisdiction to the district courts in any suit to which a corporation formed by Congress is a party. *E.g., Bankers Trust*, 241 U.S. at 306–307, 36 S.Ct. at 571 (1916).

Railway Company "to sue and be sued ... in all courts of law and equity within the United States" only gave the railroad a general capacity to sue and be sued, and it did not establish "an exceptional or privileged jurisdiction." *Bankers Trust Co. v. Tex. & Pac. Ry.*, 241 U.S. 295, 304, 36 S.Ct. 569, 570, 60 L.Ed. 1010 (1916). The Court, however, did not apply any mechanical rule, and it looked instead to the intent of Congress. *See id.* at 303, 36 S.Ct. at 570.

Defendants also cite the more recent case of *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), for the proposition that a provision which allows an entity to sue or be sued in "State or Federal" courts establishes original jurisdiction in federal courts. That case illustrates, however, that Congress differentiates grants of corporate powers to sue from grants of original jurisdiction, and that Congress did not intend the mere grant of a power to litigate in federal courts to be a grant of original jurisdiction.

As defendants point out, the Court in *D'Oench* allowed the F.D.I.C. to sue in federal court pursuant to the corporation's charter. *Id.* at 455–456, 62 S.Ct. at 678. Defendants, however, fail to note footnote 2 in which the Court cited to a part of the statute at issue, which provided that "[a]ll suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States...." *D'Oench*, 315 U.S. at 455 n. 2, 62 S.Ct. at 678 n. 2 (citing 12 U.S.C. § 264(j) (1940)).[3] The history of the statute shows that Congress added this latter provision to make the civil matters brought by or against the corporation fall under the article III judicial power, and also, therefore, under the 28 U.S.C.

§ 1331 original jurisdiction of the federal district courts.

The Banking Act of 1933 expressly provided that the F.D.I.C. could sue or be sued "in any court of law or equity, State or Federal." 48 Stat. 162, 168, 172. The Banking Act of 1935 amended that act, and one of the changes was the addition of the language quoted above. The express purpose of this amendment was to "give[e] jurisdiction, in the case of suits of a civil nature to which the Corporation is a party, to courts having jurisdiction of suits arising under the laws of the United States." S.Rep. No. 1007, 74th Cong., 1st Sess. 5 (1935). *See also Federal Deposit Insurance Corp. v. George Howard*, 153 F.2d 591, 593 (8th Cir.1946) *cert. denied*, 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 623 (1946) (special provision can only mean that suit involving F.D.I.C. is within jurisdiction of federal district courts). Clearly, if Congress believed that the express power to litigate in federal courts was sufficient to create original jurisdiction in those courts, this amendment would not have been necessary. Nothing in the committee report cited above indicates that the amendment was meant to clarify any pre-existing federal question jurisdiction.

Congress added the words "State or Federal" to the sue-or-be-sued clause of the Red Cross charter in 1947. Act of May 8, 1947, Pub.L. No. 47, § 2, 61 Stat. 80, 81 (1947) (codified at 36 U.S.C. § 2 (1982)).[4] Based on this Court's analysis of the statute at issue in *D'Oench*, the Court concludes that the amendment to the Red Cross' charter did not create original federal jurisdiction, for if Congress had intended to do so, it would have made that intent clear.[5] The amendment included essential-

3. The statute excluded cases in which the F.D.I.C. was sued in its capacity as a receiver of a state bank from this grant of jurisdiction. *D'Oench*, 315 U.S. at 455, 62 S.Ct. at 678.

4. Previously, the charter had extended the power to litigate in courts "within the jurisdiction of the United States."

5. Other statutes illustrate this point. In the Banking Act of 1933, ch. 89, § 15, 48 Stat. 162,

184, (presently codified at 12 U.S.C. § 632 (1982)), for example, Congress added a provision affecting all foreign banking which reads "all suits of a civil nature ... to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking ... shall be deemed to arise under the laws of the United States, *and the district courts of the United States shall have original jurisdiction of all such suits....*" (emphasis added).

ly the same language that was in the F.D.I.C.'s charter *before* suits involving that corporation were deemed to arise under the laws of the United States. As is discussed above, the history of the F.D.I.C.'s charter shows that Congress did not intend the grant of a corporate power to litigate in federal court to cause a case involving the grantee to arise under the laws of the United States. Furthermore, the legislative history of the amendment to the Red Cross' charter does not show a congressional intent to cause all cases involving the Red Cross to arise under the laws of the United States.

Relying upon a recommendation made by the advisory committee which studied the Red Cross' charter, defendants argue that it was already assumed that there was federal jurisdiction in suits involving the Red Cross when the charter was changed, and that the amendment was meant to clarify this. Red Cross' Memorandum, filed July 22, 1987, at 8–10. However, this argument lacks support, as there was no such grant of jurisdiction in the original charter, and the mere fact of federal incorporation was an insufficient basis upon which to infer such a grant in light of 28 U.S.C. § 1349.[6]

The Senate hearing on the charter amendments does not indicate that the Senate Committee on Foreign Relations intended to grant original federal jurisdiction for suits involving the Red Cross. *See American National Red Cross: Hearing on S. 591 Before the Senate Comm. on Foreign Relations*, 80th Cong., 1st Sess. 7–11 (1947). In fact, the discussion of the provision at issue here centered on the question of whether that provision actually limited the corporate powers of the Red Cross by not giving it the ability to litigate in foreign courts. *Id.* That discussion shows that at least Senators White, Connally, and Thom-

as viewed the provision as an endowment of corporate power, rather than subject matter jurisdiction. *Id.* Although Senator George spoke of "giv[ing] the jurisdiction in the State and Federal Courts," *id.* at 10, he went on to explain that "there might be some question about the right of a Federal corporation to be sued in a State court. I thought that was, and I still think it is, the purpose of this provision." *Id.* at 11. It would be difficult to conclude from the remarks made during the hearing that the Committee intended to cause litigation involving the Red Cross to arise under the laws of the United States, and thereby to expand the original jurisdiction of the federal courts.

The inclusion of the word "Federal" in the charter amendment apparently did have the effect of clarifying the Red Cross' ability to sue in diversity under 28 U.S.C. § 1332. Although the Red Cross was created as "a body corporate and politic in the District of Columbia," 36 U.S.C. § 1, it is also a federally created corporation. Generally, federal corporations are considered citizens of the United States, but not of any particular state, and they cannot sue in diversity. *See Burton v. U.S. Olympic Comm.*, 574 F.Supp. 517 (C.D.Cal.1983). Notwithstanding the Red Cross' status as a District of Columbia corporation, its ability to litigate under diversity jurisdiction was questioned in *Patterson v. American Nat. Red Cross*, 101 F.Supp. 655 (S.D.Fla.1951). There, the court held that the Red Cross could remove a case to federal court on the grounds of diversity. Both that court, and the one in *Rice v. Disabled American Veterans*, 295 F.Supp. 131, 133 (D.D.C.1968), which noted that the Red Cross can sue in diversity, emphasized not only that the Red Cross was created as a "body corporate" in the District of Columbia, but also that it has the power to litigate in federal court.

In the Commodity Credit Corporation Charter Act, ch. 704, § 4, 62 Stat. 1070 (1948), Congress stipulated that "the district courts of the United States ... shall have exclusive original jurisdiction of all suits brought by or against of the corporation...." *Id.* Congress later amended the Federal Deposit Insurance Corporation charter and added a provision that the "United States district courts" were to have original jur-

isdiction of all civil suits to which the corporation was a party. 64 Stat. 881, 883; 12 U.S.C. § 1819 (1982).

6. A federal corporation must demonstrate that the United States owns at least a one-half of the corporation's stock in order for a district court to have original jurisdiction based on the fact of federal incorporation. 28 U.S.C. § 1349.

*Patterson,* 101 F.Supp. at 656; *Rice,* 295 F.Supp. at 134. The court in *Patterson* did not even mention the possibility of the case arising under the laws of the United States.

## II.

Defendants also assert that the Red Cross is an agency which has a right to remove this case under 28 U.S.C. § 1442(a)(1) (1982). In *Department of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), the Supreme Court held that the Red Cross is a government instrumentality for the purposes of immunity from state taxation. Later, the Ninth Circuit Court of Appeals held that the Red Cross is not a government agency for the purposes of the Freedom of Information Act (FOIA). *Irwin Memorial v. American Nat. Red Cross,* 640 F.2d 1051 (9th Cir.1981). That court reasoned that although the Supreme Court found the Red Cross to be a government instrumentality in the context of a state taxation dispute, the Red Cross did not thereby assume the status of a government agency for other purposes. *Id.* at 1052. In light of these decisions which have examined the nature of the Red Cross, the Court will examine whether the Red Cross should be considered an agency for the purposes of 28 U.S.C. § 451.

The definition of agency includes, for purposes of Title 28, "any corporation in which the United States has a proprietary interest...." 28 U.S.C. § 451 (1982). Since the Red Cross has no stock outstanding, the Court must look for other indications that the United States has a proprietary interest which is more than incidental or custodial. *See Government National Mortgage Association v. Terry,* 608 F.2d 614, 618 (5th Cir.1979); *Acron Investments, Inc. v. Federal Savings and Loan Ins. Corp.,* 363 F.2d 236, 240 (9th Cir.1966), *cert. denied,* 385 U.S. 970, 87 S.Ct. 506, 17 L.Ed.2d 434 (1966); 18 U.S.C. § 6, Historical and Revision Notes (18 U.S.C. § 6 cited by 28 U.S.C. § 451) (corporation in which United States government has "proprietary interest" may include those having no

stock outstanding, but not where interest is merely custodial or incidental).

In *Rauscher Pierce Refsnes, Inc. v. Federal Deposit Insurance Corporation,* the Fifth Circuit looked to these other "indicia" and found that the FDIC was an agency under the definition of 28 U.S.C. § 451. 789 F.2d 313 (5th Cir.1986). The FDIC three member board is appointed exclusively by the President (the comptroller general filling one position). *Id.* at 315. The FDIC is empowered to promulgate banking regulations, examine banks, and issue orders, as a means of achieving a national policy goal set by Congress of maintaining a strong currency and a safe banking system, necessary for the health of the national economy. *Id.* at 315–316. For these reasons the court found that the national government was entwined in the operations of FDIC such as to make the government interest other than an incidental one. *Id.* at 316.

In *Government National Mortgage Association v. Terry,* the Fifth Circuit found that GNMA, which performs certain limited governmental functions in the execution of a larger national housing policy, was an agency under the definition of 28 U.S.C. § 451. *Id.* at 620. The management of GNMA is controlled entirely by a government agency, HUD, which defines the policies of GNMA and which has the power to amend bylaws and direct its operations. *Id.* at 619. GNMA is also financed by the federal government. *Id.* at 619.

■ The American National Red Cross, in contrast to GNMA and the FDIC, was not set up to perform an essential regulatory function, or an essential function in the operation of the national economy, with the federal government maintaining primary control of the corporation. This is not to say that the American National Red Cross does not have an organization and important purposes which are linked with the interests of the national government. However, although the Red Cross has been described as a quasi-public entity, *Buckley v. Valeo,* 519 F.2d 821, 921 (D.C.Cir.1975), it is not subject to the substantial federal control that is characteristic of a govern-

mental agency. *See Irwin Memorial,* 640 F.2d at 1057.[7]

Congress first incorporated the American National Red Cross in 1900. Act of June 6, 1900, ch. 784, 31 Stat. 277. In 1905, Congress reincorporated the organization and introduced government supervision of the organization, as well as federal government representation in the national organization, which until that time had been conducted as a private corporation. S.Rep. No. 2139, 84th Cong., 2nd Sess., at 2–3 (1956). These changes were made in part as a means of carrying out the provisions of the international Red Cross treaty of August 22, 1864, entered into at Geneva Switzerland. *Id.* The President currently appoints eight out of fifty American National Red Cross members to the board of governors, one of whom acts as principal officer of the corporation. 36 U.S.C. § 5 (1982). The American National Red Cross also provides many services to the active military forces, in times of peace as well as in times of war. Sturges, *The Legal Status of the Red Cross,* 56 Mich.L.R. 1, 18 (1951).

These links, however, are not sufficient to destroy the essentially private nature of the organization. The private character of the American National Red Cross and its chapters was thoroughly reviewed by the Ninth Circuit in *Irwin Memorial,* 640 F.2d at 1056–1057. Among other points made, the court noted that Congress gives only "special purpose" grants to the Red Cross, and that otherwise the organization depends upon contributions and its own revenues for operating expenses. *Id.* at 1056. Congress has expressly stated its intention of maintaining the "impartial, non-political" character of the Red Cross, and has stated that to this end the Red Cross carries out its objectives by the means of "the voluntary contribution of its members." H.R. Rep. No. 2054, 84th Cong., 2nd Sess., at 2 (1956).

The Ninth Circuit also noted that in order for the American National Red Cross to retain its membership in the International Red Cross organization, the American National Red Cross must maintain its autonomous status *vis-a-vis* the national government. *Irwin Memorial,* 640 F.2d at 1057. One indication of the organization's independence is that although the President appoints eight of the fifty members of the board of governors, a majority number, thirty, are not appointed by any branch of the national government, and the remaining twelve are appointed by the other thirty-eight board members. 36 U.S.C. § 5(a) and (b) (1982). Furthermore, the 1947 amendment of the American National Red Cross charter was framed with the objective of strengthening the participation of the vast numbers of the organization's private members, in order to democratize the organization to insure "that all American people who constitute the American National Red Cross have adequate representation in shaping the policies of the national organization...." S.Rep. No. 38, 80th Cong., 1st Sess., at 1 (1947), U.S.Code Cong.Serv. 1947, pp. 1028, 1029. It is also noteworthy that the "cooperation and assistance" which the President may accept from the Red Cross on behalf of the United States armed forces under 10 U.S.C. § 2602 (1982) appears under Chapter 155 of Title 10, entitled "Acceptance of Gifts and Services."

Finally, in holding that the Red Cross is immune from state taxation, the Supreme Court pointed out that when Congress passed tax legislation in 1960, it did not intend to strip away the Red Cross' immunity as a *nongovernment-owned instrumentality. Department of Employment v. United States,* 385 U.S. at 360, 87 S.Ct. at 467–468. This is a far different status from that of an agency in which the government has a proprietary interest.

In sum, the Court cannot conclude, on the basis of the evidence and the authorities, that the United States Government is intertwined with the Red Cross in such a way as to give the United States a "pro-

---

**7.** The notion that substantial federal control is an important characteristic of a federal corporation for the purposes of original jurisdiction is also embodied in 28 U.S.C. § 1349. *See supra* at note 6.

prietary interest," making the Red Cross an agency of the United States under the definition of 28 U.S.C. § 451. The Court does not reach the issue of whether an agency may in fact remove under 28 U.S.C. § 1442(a)(1), since Red Cross fails to meet the definition of "agency."

Furthermore, the Court rejects the Red Cross' argument that even if it is not an agency, for the purposes of § 1442(a) it is a person who acts under the authority of government officers. Although some of the Red Cross' directors are also government employees, they do not act in that capacity when they take action as Board members. Additionally, they constitute a minority of the directors. As the court in *Irwin Memorial* emphasized, the Red Cross is not subject to the substantial control of the United States Government. 640 F.2d at 1056–1057.

Based upon the discussion above, the Court concludes that this case was improperly removed and that it should be remanded to the Superior Court of the District of Columbia. An appropriate order has been issued.