C. Parke MASTERSON and Marie E.
Masterson, Plaintiffs,

v.

FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION OF TORRINGTON,
Defendant.

No. 71–C–483.

United States District Court,
E. D. New York.

Sept. 30, 1971.

Kenneth E. Warner, New York City, for plaintiffs.

Russell & Russell, New York City, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

It is alleged that the defendant, First Federal Savings and Loan Association of Torrington, converted plaintiffs' personal property, purportedly valued at $110,000, in breach of an oral agreement between the parties and in contravention of plaintiffs' Fifth and Fourteenth Amendment rights. Plaintiffs are citizens of New York. Defendant is a corporation organized under the laws of the United States with its sole place of business in Connecticut; it is under the control and supervision of the Federal Home Loan Bank Board. A mutual corporation, its stock is owned entirely by its depositors.

Defendant moves to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b), on several grounds. For the reasons stated below the action must be dismissed for one of these, absence of proper venue.

### I.

Venue in the Eastern District of New York, plaintiffs' place of residence, is claimed to be authorized by subdivision (e) of section 1391 of title 28 of the United States Code, and particularly that portion dealing with an agency of the United States. It reads in relevant part as follows:

"A civil action in which each defendant * * * is an agency of the United States, may * * * be brought in any judicial district in which: * * * (4) the plaintiff resides if no real property is involved in the action."

The controlling question is whether defendant is "an agency of the United States" within the meaning of the statute.

Plaintiffs rely on the Home Owners' Loan Act of 1933 (12 U.S.C. §§ 1461 et seq.), authorizing the Federal Home Loan Bank Board to charter and regulate federal savings and loan associations and specifying that such associations may act, when and if designated for that purpose, as fiscal agents for the federal government. This pattern, in their submission, creates a structural and functional intimacy between the associations and the government sufficient to bring the case at bar within the purview of subdivision (e) of section 1391. The theory, simply stated in plaintiffs' own language, is that "just as the [Federal Home Loan Bank] Board is an arm of the United States, the associations are hands and fingers on that arm."

This contention ignores the definition of "agency" contained in section 451 of title 28. It covers only corporations in which the United States has a proprietary interest. The provision reads as follows:

"The term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States *or any corporation in which the Unit-*

*ed States has a proprietary interest,* unless the context shows that such term was intended to be used in a more limited sense." (Emphasis added.)

It is significant that this definition applies to "this title" (28 U.S.C. § 451)— i. e., to title 28, including all applicable venue provisions.

■ Congress explicitly included within the concept of agency only corporations in which the United States has a proprietary interest. Corporations wholly owned by private persons may not be treated as federal agencies for venue purposes merely because they are subject to federal regulation or because they may, in occasional transactions, act as fiscal agents for the government.

An analysis of section 5 of the Home Owners Loan Act (12 U.S.C. § 1464) discloses a legislative design not to subject what are primarily local institutions to the burden of multistate litigation. In summary, that section provides that an association may proceed against the Home Loan Bank Board either in the judicial district in which the home office of the association is located, or in the District of Columbia. *See, e. g.,* 12 U.S.C. § 1464(d) (1). In contrast, actions by the Board against an association may be brought only in the district in which the home office of the association is located. *See, e. g.,* 12 U.S.C. § 1464(d) (3) (C).

■ None of the cases relied upon by plaintiffs—containing language to the effect that federal savings and loan associations are "agents" or "instrumentalities" of the government—involve characterization for venue purposes. Rather, they deal with readily distinguishable questions of law and policy, such as whether the actions of an association can be controlled under state law without first exhausting federal administrative remedies provided by the Federal Home Loan Bank Board. *See, e. g.,* California v. Coast Federal Savings &

Loan Association, 98 F.Supp. 311 (S.D. Cal.1951). Conversely, in the only case of which we are aware where the instant question has been directly raised, the Court ruled as an alternative holding that an association is not a federal agency for venue purposes. Chase Savings & Loan Association v. Federal Home Loan Bank Board, 269 F.Supp. 965, 967 (E.D.Pa.1967).

II.

As a second ground for sustaining venue plaintiffs urge that defendant is licensed to do business in the Eastern District of New York. "A corporation may be sued in any judicial district in which it is * * * licensed to do business. * * *" 28 U.S.C. § 1391 (c). Subdivision (c) of section 1464 of title 12 does authorize a federal savings and loan association to lend funds on the security of first liens upon real property within 100 miles of its home office—here Torrington, Connecticut. This area includes the Eastern District of New York.

■ In its usual meaning, the phrase " 'licensed to do business' pertains to a foreign corporation's compliance with the regulations of a State in order that it may have the privilege of transactiong business therein." Buy–4– Less Drug System, Inc. v. American Distilling Co., 207 F.Supp. 391, 392 (D. Colo.1962). The issue is whether Congress, in authorizing federal savings and loan associations to make loans secured by mortgages on real property located outside of their respective home states, intended either express or implied sanctioning of activity which could reasonably be termed the transaction of business in such states. We conclude that no such intent was manifested.

To the contrary, Congress specifically established a system of federal savings and loan associations "[i]n order to provide *local* thrift institutions," and authorized the Home Loan Bank Board to charter such associations "giving pri-

mary considerations to the best practices of *local* mutual thrift and home-financing institutions. * * *" 12 U.S.C. § 1464(a) (emphasis added). Consistent with this mandate, the Board prohibits by regulation the establishment of any branch office outside the state in which an association's home office is located. 12 C.F.R. § 556.5(b) (2).

Defendant is empowered to enter the Eastern District of New York for limited purposes only, such as the inspection of property or foreclosure of a mortgage, incidental to loans made in Connecticut. An implied authorization to engage only in limited activity outside the state is not a license to do business under the venue provisions. 28 U.S.C. § 1391(c).

It is of some significance that such activities by a foreign savings and loan association would not constitute doing business within the state under New York law. N. Y. Bank. Law § 408. While federal law controls our interpretation of section 1391 (Control Data Corp. v. Carolina Power & Light Co., 274 F.Supp. 336, 340 (S.D.N.Y.1967)), state law is often of significant aid in interpreting a federal standard. As the Supreme Court noted in deciding whether state long-arm statutes meet federal due process requirements,

"The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license * * * provide a helpful * * * test." Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952)

Here the New York statute demonstrates a conclusion by a responsible regulating authority that the out-of-state activities of savings and loan associations do not either require or constitute a license to do business.

There is, too, a practical aspect of the matter of venue that may not be ignored. Since a hundred mile radius from Torrington covers a large part of the northeast of the United States, plaintiffs' theory would subject defendant to suit in no less than nine judicial districts in seven different states. Section 1391(c) should not be read to achieve a result so inconsistent with the express congressional plan that federal savings and loan associations exist and function as local institutions. In interpreting subdivision (c) of section 1391 "the Court must consider and balance the inconveniences." Paragon Oil Co. v. Panama Refining & Petrochemical Co., 192 F.Supp. 259, 262 (S.D.N.Y.1961).

III.

There is no basis on which to sustain venue in the Eastern District of New York. No special circumstances require that this action be transferred to the proper district in the interest of justice. 28 U.S.C. § 1406(a). Plaintiffs are free to commence their action properly if they so desire. The action is dismissed.

So ordered.