**KELVIN DENNIE INDIVIDUALLY AND ON BEHALF OF HIS MINOR SON NKOSI, Plaintiffs**

v.

**UNIVERSITY OF PITTSBURGH SCHOOL OF MEDICINE AND PRESBYTERIAN UNIVERSITY HOSPITAL AND NIEL WALD, M.D. AND JOHN DOE, Defendants**

Civil No. 83/389

District Court of the Virgin Islands

Div. of St. Croix

June 8, 1984

52

RANDALL JOHNS, ESQ., Christiansted, V.I., *for plaintiffs*

VINCENT A. COLIANNI, ESQ., Christiansted, St. Croix, V.I., *for defendants*

O'BRIEN, *Judge*

## MEMORANDUM OPINION & ORDER

THIS MATTER is before the Court on Motion of Defendants the University of Pittsburgh School of Medicine, Presbyterian University Hospital, and Niel Wald, M.D., to dismiss the above captioned matter pursuant to Fed. R. Civ. P. 12(b) for lack of in personam jurisdiction, and for failure to state a claim upon which relief can be granted. The parties submitted memoranda and supporting affidavits and participated in oral argument before this Court on April 11, 1984. For the reasons which follow we will dismiss this matter for lack of personal jurisdiction over all defendants and, because such a determination is totally dispositive, this Court need not consider the failure to state a claim issue.

## I. BACKGROUND

This Court is not unfamiliar with the occurrences precipitating the present action. Kelvin Dennie (hereafter "Dennie") has on three prior occasions within the past two years filed suit in this forum asserting claims substantially similar to those now raised. With only slight changes, these previous actions have all been filed against the same collection of defendants.[1] In two of those actions, where Dennie appeared pro se, the complaints were sua sponte dismissed for lack of personal jurisdiction over the defendants.[2] In the remaining action where plaintiff was, as now, represented by counsel, the matter terminated in a joint stipulation of dismissal

---

[1] Dennie's earlier filings also named Dr. Wald and Presbyterian University Hospital as defendants. Dennie on one occasion brought a Michelle Wanto into the fray. This is the first action to name the University of Pittsburgh School of Medicine.

[2] Civil Nos. 83/227 and 82/251 (D.V.I., Division of St. Croix).

without prejudice to Dennie's later filing in a court of competent jurisdiction.[3]

The genesis of Dennie's present grievance is to be found in an even earlier civil dispute. Dennie, along with his minor son Nkosi, were named plaintiffs in the case of Dennie v. Hess Oil Virgin Islands Corp., et al., Civil No. 177/1977 (D.V.I., Division of St. Croix filed August 31, 1977) (hereafter "HOVIC" and the "HOVIC case"). There Dennie contended that while working as a radiographer for a subcontractor of HOVIC at the refinery on St. Croix, he developed neutropenia,[4] due to his constant exposure to radioactive isotopes contained in a gamma ray projector and other testing equipment used by him during the course of his employment. Dennie sought damages from HOVIC and the manufacturer of the testing devices for his own disability and physical and mental anguish as well as for that of his son, who Dennie alleged was born with sickle-cell anemia due to Dennie's exposure to radiation. In May of 1980, Dennie and his son travelled to Pittsburgh, Pennsylvania, for the administration of several tests to determine the existence, the nature and extent of any possible radiation injury to them. These tests were all performed at the facilities of Defendant University of Pittsburgh School of Medicine (hereafter "Medical School") located on the premises of Defendant Presbyterian University Hospital (hereafter "Hospital"). Thereafter, on June 10, 1980, Defendant Niel Wald, M.D. (hereafter "Dr. Wald"), Director of the Department of Radiation Medicine at the Hospital communicated, through counsel, to the defendants in the HOVIC case. Dr. Wald opined that on his review of the results of the tests performed on Dennie and his son, there was "very little basis" to support the Dennies' contention that any problems with their health were the result of Dennie's occupational exposure to radiation. (Exhibit E, Attached to complaint.) It is the parties disagreement over the purpose of these tests, and the posture of Dr. Wald in imparting his opinion as to their results, which forms the core of Dennie's present (and prior) litigation.

Dennie contends that he consented to the tests performed on himself and his son in order to aid investigational research into the

---

[3] Civ. No. 82/52 (D.V.I., Division of St. Croix).

[4] Neutropenia is a condition where the blood contains fewer than the normal number of white blood cells. The term is often used in reference to the disease more commonly known as leukemia. See, e.g., Schmidt's Attorneys' Dictionary of Medicine (1982).

production and distribution of blood cells. (Complaint, § 14 at 3.) The testing would also be helpful in determining for Dennie himself whether his developing neutropenia was a consequence of his exposure to radiation in the course of his employment. (Id., § 16 at 3.) Dennie asserts that he was never informed that the testing was conducted at behest of the HOVIC defendants or was in any way connected with the then ongoing HOVIC litigation. (Affidavit of Dennie, filed March 14, 1984.) Consequently, Dennie concludes that: 1) Dr. Wald's June 10th letter was an unauthorized release of confidential information which violated Dennie's physician/patient privilege, and that 2) Dr. Wald's opinions to Dennie and the HOVIC defendants were fraudulent and misrepresented the extent of Dennie's injuries, causing him to settle the HOVIC case for less than an appropriate amount.[5]

The defendants here: Dr. Wald, the Medical School and the Hospital, have a different recollection altogether and assert quite the opposite. They contend that the examination and testing of Dennie and his son were simply discovery in the HOVIC matter done at the request of defense counsel for HOVIC and with the consent of counsel for Dennie. Defendants do not sit and wait on the defense of waiver, however, but seek summary dismissal of this case on the grounds of lack of personal jurisdiction in this forum as all transactions and occurrences producing the present suit took place in Pittsburgh, Pennsylvania.

## II. DISCUSSION

Dennie does not allege that any of the defendants' activities complained of occurred within the Virgin Islands.[6] He submits, however, that this Court should exercise personal jurisdiction over the nonresident defendants as: 1) defendants are so closely associated with a federal agency as to be accessible here through the nationwide personal jurisdiction provided in the Privacy Act, 5 U.S.C. § 552a; and 2) defendants' purposeful contacts with the territory are such that all are amenable to process in this jurisdiction through the exercise of the Virgin Islands long-arm statute, 5 V.I.C. § 4903.

---

[5] Dennie settled the HOVIC matter for $250,000.

[6] Dennie's complaint makes no such allegations. In Plaintiff's Response to Defendants Motion to Dismiss Dennie argues that the claims arose from the defendants' activities within the Virgin Islands.

55

## A) The Privacy Act

Dennie seeks compensation from the defendants for their alleged violation of the Privacy Act, 5 U.S.C. § 552a. Section 552a generally provides restrictions on what information a federal agency may keep about private individuals, and prevents, with limited exceptions, the agency's disclosure of any information concerning an individual absent that individual's request or written consent. 5 U.S.C. § 552a(b). The Privacy Act goes on to set up remedies for violation of its terms and nationwide jurisdiction for its enforcement. It allows that one aggrieved by a federal agency's wrongful disclosure of information pertaining to him may bring a civil damage action against that agency in the district court of the United States located where the complainant resides. 5 U.S.C. § 552a(g)(4) and (5).

■ Dennie faces a problem in reaching the present defendants through the Privacy Act, however, as the statute, by its own terms, applies only to federal agencies and agency records. 5 U.S.C. § 552a (a)(1) and (4). Dennie attempts to bypass this limitation contending that by receiving federal grants from and participating in cooperative research projects with the Bureau of Radiological Health (hereafter "BRH"), Dr. Wald, the Medical School and the Hospital have become so intertwined with a federal agency (the BRH) as to become subject to the restrictions of the Privacy Act.

In determining whether any of defendants are a "federal agency" and thus suable in the Virgin Islands pursuant to section 552a's broad grant of in personam jurisdiction, we look first to the statute itself. The Privacy Act adopts the definition of agency as found in the Freedom of Information Act (hereafter "FOIA"). See 5 U.S.C. § 552a(a)(1). The FOIA, in turn, incorporates the definition as contained in the Administrative Procedure Act, 5 U.S.C. § 551(1), which defines "agency" to mean "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." See 5 U.S.C. § 552(e). The FOIA was then amended in 1974 to provide as follows:

> For purposes of this section, the term "agency" as defined in section 551(1) of this title includes any executive department, military department, Government Corporation, Government controlled corporation; or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(e). It was intended that this broader language in sec-

tion 552(e) bring federal entities under the purview of the Privacy Act and the FOIA which would not have been so regulated prior thereto. See H.R. Rep. No. 93-876, 93rd Cong., 2d Sess. reprinted in 1974 U.S. Code Cong. of Ad. News 6267.

It is not clear into which category in this expanded definition of agency Dennie intends to group the defendants. Regardless, Dr. Wald will not fit. Assuming for the moment that Dr. Wald's relationship with either his co-defendants or the BRH rendered him a governmental employee or official, the terms of section 552a simply do not apply to individuals. Windsor v. The Tennessean, 719 F.2d 155 (6th Cir. 1983), reh. denied (1984); Bruce v. United States, 621 F.2d 914, 916 n. 2 (8th Cir. 1980); Parks v. United States Internal Revenue Service, 618 F.2d 677 (10th Cir. 1980). Had Congress the intent to subject individuals to the civil remedies provided in Privacy Act it certainly had the wherewithal to do so, as it did choose to subject individuals to criminal penalties provided in 5 U.S.C. § 552a(i). See Windsor, supra, n. 5 at 160.

We do not see the Hospital or Medical School as reachable under the Privacy Act either. Regardless of what section 552(e) label Dennie could place on these defendants, he has not made the threshold showing of substantial federal control or supervision necessary to characterize an entity as "federal" for these purposes. See Forsham v. Harris, 445 U.S. 169, 180–81 (1980); Irwin Memorial Blood Bank v. American National Red Cross, 640 F.2d 1051, 1054–55 (9th Cir. 1981); Rocap v. Indiek, 539 F.2d 174, 177 (D.C. Cir. 1976). While this federal control may be "manifested in various forms" and consists of a "confluence of several 'federal' characteristics", Dennie has alleged no facts which make either defendant a federal agency. See Irwin, supra, at 1055.

■ Dennie does allege that both the Hospital and the Medical School were recipients of federal research grants from the BRH, and thus subject to federal supervision, but this in and of itself is not sufficient. In Forsham, supra, the Supreme Court faced the issue of whether a university diabetes group which received all of its funding from the federal government was an agency subject to FOIA requirements. In holding that it was not, the Court plainly stated that "absent extensive, detailed and virtually day-to-day supervision," the recipient of public funds does not become a federal instrumentality or an FOIA agency. Forsham, supra, at 180. As Dennie alleges no such comprehensive supervision, he cannot reach defendants on the sole basis of their being federal grantees.

■ The Irwin, supra, court sets out several other factors to consider in determining whether an organization is a federal agency under section 552(e). The dispute there focused on a blood bank's attempts to order the Red Cross to disclose financial records through the FOIA. In holding that the Red Cross was not a federal agency for FOIA purposes, the Court looked to: 1) whether the federal government played a role in organizing the institution; 2) whether the United States particularly appropriated funds for the benefit of the institution; and 3) whether governmental officials directed the daily affairs of the institution. While recognizing that the Red Cross was subject to a certain amount of federal supervision, the Court found in the negative as to all the forementioned considerations and held the Red Cross not to be subject to the FOIA. Applying the Irwin criteria to the matter sub judice, we cannot help but conclude that there is no substantial federal supervision and control over the Hospital and Medical School, and thus, they are not federal agencies. Dennie has simply made no allegations, nor pointed this Court to any lines of authority, which suggest the contrary.

Dennie, alternatively, makes the somewhat unique argument that even if the defendants are not agencies, their research records are nonetheless records of a federal agency subject to the strictures of the Privacy Act. He apparently bases this assertion on two grounds: first, that a federal agency (the BRH) will eventually have access to the information contained in the records and, second, that the agency will, subsequent to receiving the records, take some action in reliance thereon. Thus, Dennie concludes, the agency has the responsibility to establish rules and procedures to insure these records are maintained in compliance with the Privacy Act. See U.S.C. § 552a(e)(9).

■ While unique, the argument has one critical fault. Assuming without deciding that on this line Dennie states a valid claim, the Privacy Act by its terms only allows for nationwide personal jurisdiction in actions against a federal agency. 5 U.S.C. § 552a. As we have just seen, not one of the defendants present here falls into that class. Consequently, Dennie's attempt to bring defendants into this jurisdiction on the basis of the Privacy Act must fail.

## B) The Long-Arm Statute

Dennie also attempts to bring defendants into this forum through the exercise of the Virgin Islands long-arm statute, 5 V.I.C. § 4903. Section 4903 does enable this Court to assert personal jurisdiction over nonresident defendants, providing in pertinent part:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(2) contracting to supply services or things in this territory;

(3) causing tortious injury by an act or omission in this territory;

5 V.I.C. § 4903(a)(2) and (3).[7] Defendants challenge the application of the long-arm statute to them on both statutory and constitutional grounds.

◼ We note initially that we need not determine whether or not the defendants here have had sufficient "minimum contacts" with the territory as required by the due process clause of the Constitution. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980); Hanson v. Denkla, 357 U.S. 235 (1958); International Shoe Co. v. Washington, 326 U.S. 310 (1945). It has not yet been determined whether the range of the Virgin Islands long-arm statute is coextensive with the farthermost reaches of the due process clause and, thus, whether the Supreme Court's one-step "minimum contracts" analysis in the forementioned line of cases is appropriate. See Carty v. Beech Aircraft Corp., 676 F.2d 1051 (3d Cir. 1982); Hendrickson v. Reg O Co., 657 F.2d 9 (3d Cir. 1981); see generally R. Casad, Jurisdiction in Civil Actions 4-5-4-7 (1983). This Court will instead make a two-step inquiry into the question of long-arm jurisdiction. We will look first to whether the exercise of jurisdiction is authorized by the terms of the statute, and, only if the answer is in the affirmative, then second, to whether the exercise of jurisdiction is consistent with the constitutional requirements of due process. Hahn v. Vermont Law School, 698 F.2d 48 (1st Cir. 1983); Peanut Corp. of America v. Hollywood Brands, 696 F.2d 311 (4th Cir. 1982); Montana Feeds v. Argo Impex, 677 F.2d 651 (8th Cir. 1982); Yarborough v. Elmer Banker, 669 F.2d 614 (9th Cir. 1982).

◼ Dennie first attempts to get jurisdiction over defendants based on their "contracting to supply services . . . in this territory" per section 4903(a)(2). The gist of this argument appears to be that, if defendants were indeed performing tests on Dennie pursuant to

---

[7] Those familiar with this act may wonder why jurisdiction was not sought under § 4903(a)(4) which allows jurisdiction for ones "causing tortious injury in this territory by act or omission outside the territory". Dennie is barred by res judicata from utilizing this subsection as it was previously raised in Civ. No. 82/251 which was dismissed for lack of personal jurisdiction. See note 2, supra.

discovery in the HOVIC radiation case, defendants must have intended, at some later point in time, to appear in the Virgin Islands as defense experts for depositions or at trial. Initially we note that nowhere in his complaint does Dennie ever make the necessary allegations concerning the existence of such a contract. Assuming for the sake of argument however, that a contract did exist, that existence on its own does not vest this Court with jurisdiction over the defendants in this matter. Dennie overlooks the import of the second major subsection of section 4903 which allows that "only a claim for relief arising from the acts enumerated in this section may be asserted against him." 5 V.I.C. § 4903(b). Thus, in order for these nonresident defendants to be amenable to suit in the Virgin Islands under the long-arm statute, the cause of action must arise out of the basis for this Court's exercise of in personam jurisdiction. See, e.g., Time Share Vacation Club v. Atlantic Resorts, et al., 735 F.2d 61 (3d Cir. 1984) (Pennsylvania law); De James v. Magnificence Carriers, 654 F.2d 280 (3d Cir.), cert. denied, 454 U.S. 1085 (1981) (New Jersey law).

■ Dennie has not shown the necessary nexus between this action and that contract. The gravamen of this claim is that a physician in Pennsylvania violated his professional duty to Dennie by revealing sensitive information in Dennie's medical records to persons not entitled to view them. In no way can this be viewed as a claim "arising from" a prior contract for services to which Dennie was never a party.

■ The second prong of Dennie's long-arm jurisdictional assertion is that defendants caused a "tortious injury" to Dennie by "an act or omission in this territory." 5 V.I.C. § 4903(a)(3). A review of the pleadings reveals no instance in which any defendant was ever present in the Virgin Islands, much less that one committed an "act or omission" harming Dennie while here. Regardless, the "legislative history" to section 4903(a)(3) located in the Commission's Comment does not lend itself to Dennie's interpretation. It notes that "(a)(3) applies when the tortious act or omission occurs in the state even though *the resulting injury occurs elsewhere.*" 13 Unif. L. Ann. § 1.03 at 468 (emphasis added). Dennie's allegations cannot reasonably be viewed as stating any claim arising out of defendants' activity within the Virgin Islands. Consequently, jurisdiction cannot be premised on section 4903(a)(3).

Summing up then, we find that personal jurisdiction over Dr. Wald, the Hospital and the Medical School cannot be asserted under

section 4903(a)(2) because Dennie's claim does not arise out of a contract to provide services in the territory, nor under section 4903(a)(3) as there was no act or omission by defendants in the Virgin Islands.

## C) 28 U.S.C. § 1391(e)

■ Dennie makes a final attempt to persuade this Court to compel defendants to appear in the Virgin Islands. He relies on section 2 of the Mandamus and Venue Act of 1962, 28 U.S.C. § 1391(e) which provides in part that:

> [a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority . . . may, except as otherwise provided by law, be brought in any judicial district in which (4) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e). The act itself does not define the term "agency" but the intent of Congress in using the term can be discerned by looking to the committee report which indicates that "agency" means any department, administration, commission, independent establishment, authority, board or bureau of the United States, or any corporation in which the United States has a proprietary interest. S. Rep. No. 1992, 87th Cong., 2d Sess. reprinted in 1962 U.S. Code Cong. & Ad. News 2785. Once, again, this Court is without sufficient allegations to enable us to determine into which enumerated category Dennie would attempt to place defendants. Regardless, they would not fit here either. Dennie cannot point this Court to any nexus between the defendants and the United States government sufficient to convert them to federal agencies. See Powers v. Mitchell, 463 F.2d 212 (9th Cir. 1972) (local draft board not agency); Masterson v. First Federal Sav. and Loan Ass'n., 53 F.R.D. 313 (E.D.N.Y. 1971) (federal savings and loan association not agency). Thus, we hold Dr. Wald, the Hospital and the Medical School not to be agencies within the terms of section 1391(e), and this Court may not exercise jurisdiction over them on its authority.

## CONCLUSION

■■ We note here that once the defendants properly raised the defense of lack of in personam jurisdiction by Fed. R. Civ. P. 12(b) motion, Dennie bore the burden of proof in establishing jurisdiction. See, e.g., Time Share, supra; Compagnie des Bauxites de

Guinee v. L'Union, 723 F.2d 357 (3d Cir. 1983). Here the Court is required to determine factual issues outside the pleadings: whether personal jurisdiction lies in the Virgin Islands. Time Share, supra, n. 9 at 66. Dennie may not successfully rely on his bare pleadings to withstand a motion to dismiss but should have established jurisdictional facts through sworn affidavits or other competent evidence. See Int'l Ass'n of Machinist & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700 (3d Cir. 1982). That Dennie did not do.

We recognize that the plaintiffs have outstanding interrogatories to Dr. Wald, and a production request for documentation referred to in his answers to those interrogatories. We have carefully read the complaint, and the questions asked of the interrogatories, and are satisfied that we need not await the filing of any response to reach the conclusions contained in this opinion. The complaint alleges that the defendants are covered by the Privacy Act only by reason of receipt of research grants from a federal agency. Since we have held herein that even accepting such a factual allegation as true, it is not enough to bring defendants within the requirements of the Act, any discovery to establish that allegation would be meaningless.

Finally, we recognize that dismissal of this complaint almost four years to the date after Dr. Wald's letter was written will seriously hinder Dennie's ability to maintain his action in a court of competent jurisdiction. To this Court's knowledge, no protective actions have been filed and the statutes of limitations run untolled. Any future difficulty will have been caused by no one but Dennie, however. Despite the knowledge that none of the defendants had or have any relationship with the Virgin Islands sufficient to make them amenable to suit in this forum, and that an alternative forum exists where he could get personal jurisdiction over all the defendants, Dennie has repeatedly filed his complaints here. While precedence is not always destiny, it unfortunately appears to be so in this matter. For the foregoing reasons the complaint herein will be dismissed for lack of personal jurisdiction over the defendants.

## ORDER

THIS MATTER is before the Court on motion of defendants the University of Pittsburgh School of Medicine, the Presbyterian University Hospital and Niel Wald, M.D., to dismiss the above captioned matter for lack of in personam jurisdiction. A memorandum opinion having been filed on even date herewith and the premises considered, now therefore it is

ORDERED:

THAT defendants' motion to dismiss this matter for lack of in personam jurisdiction be and the same hereby is GRANTED; and

THAT complaint in this matter be and the same hereby DISMISSED.