SUPERIOR COURT 
 
 ROBIN LANG vs. JOHN BARRY, M.D., et al

 
 Docket:
 84-508
 
 
 Dates:
 April 9, 1984
 
 
 Present:
 Edith W. Fine
 
 
 County:
 Essex
 

 
 Keywords:
 MEMORANDUM AND ORDER ON DEPONENT'S MOTION FOR A PROTECTIVE ORDER
 
 

             The instant malpractice action involves a suit against three doctors for their alleged negligent treatment of the plaintiff. In the course of discovery, plaintiff subpoenaed copies of hospital rules as well as reports and documents of hospital personnel files and peer review meetings.[1] Deponent Beverly Hospital, not a party to the case at bar, has challenged the subpoena chiefly on the ground that the documents requested are privileged.
            Massachusetts Rules of Civil Procedure, Rule 26(b)(1) outlines the scope of discovery. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." The court will
 
--------------------------------------------
 
[1]See copy of items  requested by plaintiff in attached Exhibit A.
 
                                                            -1-
 
grant the discovery request “if the information sought appears reasonably calculated to lead the discovery of admissible evidence.” Id. The deponent claims that some items which plaintiff wishes to subpoena are irrelevant. However, the court is unpersuaded by this claim and finds that all materials are either highly relevant to the issue of negligence or likely to lead to the discovery of admissible evidence. The only remaining issue is whether any of the subpoenaed materials are privileged.
            The precise  issue under consideration is whether any reports, minutes or other documents generated by a peer review or any other medical staff committee meeting are discoverable.[2] Peer review or other ad hoc medical staff committee meetings are charged with the responsibility of monitoring and improving the quality of a hospital's medical treatment. Federal law and regulations, not state law, necessitate the existence of these committees. In order to qualify for federal Medicare reimbursements, hospitals must be accredited by the Joint Committee on the Accreditation of Hospitals (JCAH).[3] To obtain JCAH' s accreditation, hospitals  must have quality assurance programs. [4] The JCAH has stated that, in fact, peer review committees are responsible for 
 
--------------------------------------------
 
[2]For a general. discussion of this issue see Note, Medical Peer Review Protection in the Health Care Industry, 52 Temple L.Q. 552 (1972); Note, Medical Malpractice Litigation: The Discoverability and Use of Hospital Quality Assurance Committee  Records, 16 Washburn L. J. 54 (1976) ; Hospital Committee. Proceedings and Reports: Their Legal Status, American Journal  of Law Medicine, Vol. I, No. 2 (Fall 1975).
[3]42 U.S. C. §1395 ( bb) (a) ( l) ( 1976) 
[4]Accreditation Manual for Hospitals, 131-134 (1978).
                                                            -2-
 
monitoring the quality of the hospital's patient care.[5]
            The only state law relevant to peer review committees is G.L.c.231, §85N. This statute grants members of staff committees immunity against civil suits for their activities taken in conjunction with their role on peer review committees. The legislature has not seen fit to create a privilege protecting the proceedings and reports of staff review committees.[6] Therefore, the task of "balancing the public's interest...against public policy considerations" falls upon this court. Three Juveniles v. Commonwealth, 390 Mass. 357, 364 (1983). That the court is "free to identify a privilege" is without question. Id. at 360.
            The principal case in support of the moving party's is Bredice v. Doctors Hospital, Inc , 50 F.R.D. 249 (D.D.C. 1970) aff'd 479 F.2d 920 (D.C. Cir 1973). There, the court created a qualified privilege [7]for  the minutes and reports of the medical staff committee which had investigated allegations of malpractice. The court first stated that "committee  work [was]...performed with the understanding that all communications therein [were]... confidential." Bredice, 50 F.R.D. at 250. Any disclosure of that information would have breached the committee members' expectation of confidentiality. Mere importantly, the court opined that
 
--------------------------------------------
 
[5] American Medical Association, 1 Peer Review Manual 2 (1972)
[6]Gov. Dukakis vetoed a bill which would have limited access to the records, reports, and proceedings of hospital medical stat review committees. See Massachusetts Hospital Association, Monday Report (July 14, l975).
[7]The qualified privilege could be overcome by a showing of "extraordinary circumstances." Bredice, 50 F. .D. at 251.
 
                                                            -3-
 
“confidentiality is essential to effective functioning of these staff meetings ... Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.... As  doctors have a responsibility for life and death decisions .(t)here is an overwhelming public interest having those staff meetings held on a confidential basis so that the  flow  of ideas and advice can continue unimpeded. “ Id. at 250-251. The   chilling   effect   which  disclosure   of the committee’s  reports may have upon the candor and, therefore, the efficacy of peer review remains the chief rationale for the nondisclosure of review committee documents.
            Decisions in some other jurisdictions have either followed or approved the reasoning   of Bredice. In Gillman v. United States, 53 F.R.D. 315 (S.D.N.Y. 1971), the court, citing Bredice, held that the reports of a hospital's Board of Inquiry were not discoverable notwithstanding the absence of a statutory peer review privilege. [8] In a jurisdiction w ere the statutory scheme expressly provided that staff review committee information was subject   to subpoena, the court  reached the same result as in  Bredice   and   Gillman  by   denying access to a review committee’s
 
--------------------------------------------
 
[8] In Gillman, 53 F.R.D. at 319, the court held that statements made to the review committee were not within the scope of the privilege.
 
                                                            -4-
 
minutes and reports.[9] Tucson Medical Center, Inc. v. Misevch, 545 P. 2d 958, 961 (Ariz. 1976). Two other jurisdictions relied on Bredice’s confidentiality rationale to broaden the scope of statutes which protected the proceedings a d records of review committees from subpoenas. Posey v. District Court, 586 P 2d 36,  37 (Colo. 1978) (defendant medical center protected by  privilege although statute expressly limited to civil suits against physicians);   Dade County   Medical   Association  v. Hlis, 372 So. 2d 117, 119 (?la. App. 1979) (medical center, not a party litigation, protected by privilege although statute expressly limited to civil action against health care provider). Finally, Bredice was   cited  with  approval in Oviatt v. Archbishop Bergan Mercy Hospital, 214 N.W. 2d 490, 492 (Neb. 1974) to prevent plaintiff’s  use of review  committee minutes  and reports at trial 
            Other jurisdictions have refrained from the creation of a peer   review  privilege. Wesley Medical Center v. Clark, 669 P .2d 209 (Kan. 1933); Robinson v. Magovern,  83 F.R.D.  79 (W.D.  Pa. 1979)  ;  Davison v. St. Paul Fire   and Marine  Insurance Co., 248 N.W. 2d 433 (Wis. 1977); Nazareth Literary & Benevolent Institution v. Stephenson, 503 S.W. 2d 177 (Kty. App. 1973);
 
--------------------------------------------
 
[9]similar to Gillman, statements and information considered by the committee were not held to be privileged. Tucson Medical Center, 545 P 2d at 961.
 
                                                            -5-
 
Kenney v. Superior Court of Yolo County, 63 Cal. Rptr.  84 (1967). One of the principal concerns of these jurisdictions is the interference of the privilege with the truth-seeking function of the judicial process. See, e.g., Robinson, 83 F.R.D. at 85. Typically, a peer review committee will investigate incidents of alleged substandard conduct by resident physicians. Information obtained and generated by the committee would be of great probative value to the plaintiff in  a malpractice  action. Thus, some   courts   have found that the plaintiff's interest, as well as that of the judicial branch, in uncovering the truth outweighs the potential benefits to confidential peer review deliberations. 
            It is also argued that evidentiary privileges are generally disfavored, especially in the light of recent Supreme Court case law. Wesley, 669 P. 2d at 218; Robinson, 83 F.R.D. at 85-87. In United Stated v. Nixon, 418 U.S. 683 (1974), the respondent claimed that an executive privilege entitled communications between the President  and his advisors to confidentiality. The Court recognized that nondisclosure enhanced "the public interest in  candid, objective ... Presidential  decision-making...” Yet, the Court abstained from carving our an executive privilege and announced that "these   exceptions   to the demand for every man’s evidence are not lightly created nor expansively construed, for 
 
                                                            -5-
 
they are in derogation of the search for truth.” Id. At 710. Clearly, the Supreme Court’s pronouncement of judicial restraint in Nixon militates against this court’s embracing a peer review committee privilege. 
            Courts   have  also been reluctant to establish this privilege where the legislature has not promulgated statutory protection. See, e.g., Wesley, 669 P. 2d at 219. Most recently, the Court in Three Juveniles v. Commonwealth, 390 Mass. 357 (1983) found that there is no parent-child privilege and relied, inter alia, on the fact that legislature had not chosen to establish such a privilege. Id. At 361, 364. The Court may be reluctant to adopt a different posture as to a medical review committee privilege. 
            In the final analysis, having considered the interests of the parties and the public, I am of the opinion that a privilege based upon public policy consideration does not exist in this situation. This rendered the minutes, reports and documents of peer review committees a proper subject of discovery where clearly relevant to the plaintiff’s claim. In my view, the public interest in the truth-seeking function of the judicial system outweighs the desirability of protecting the peer review process. Two factors are particularly important to the decision: the failure of legislature to enact a statutory privilege for 
 
                                                            -7-
 
the peer review process, combined with the Supreme Judicial Court’s recent and empathetic refusal to create a parent-child privilege absent legislative action, Three Juveniles v. Commonwealth, 390 Mass. 357 (1983).
ORDER
            Accordingly, the deponent Hospital's motion for a protective order is denied with regard to all five items which the plaintiff subpoenaed.
/s/Edith W. Fine
Justice of the Superior Court
April 9, 1984