**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**CITY OF SPOKANE,
Defendant–Appellant.**

**No. 90–35118.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1990.

Decided Oct. 31, 1990.

As Amended on Grant of Appellee's Motion For Clarification Nov. 27, 1990.

Laurie Flinn Connelly and Michael A. Nelson, Asst. City Attys., Spokane, Wash., for defendant-appellant.

Gary R. Allen, David English Carmack, and Kenneth W. Rosenberg, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before SKOPIL, O'SCANNLAIN and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

The United States brought this action against the City of Spokane ("the City") and Spokane's Manager of Finance, Peter Fortin, to preclude the collection of a tax on the gambling proceeds of a local unit of the American National Red Cross, and to recover back taxes, together with interest. The district court granted summary judgment in favor of the United States [1] and the City appealed. We affirm.

## BACKGROUND

The American National Red Cross is a unique charitable institution. It was created by the United States to perform such exceedingly important public functions as aiding "the sick and wounded of Armed Forces in time of war," and carrying on "a system of national and international relief in time of peace" to mitigate "the sufferings caused by pestilence, famine, fire, floods, and other great national calamities...." 36 U.S.C. § 3. Eight of its fifty governors are appointed by the President of the United States and one of those eight acts as the principal officer of the corporation. 36 U.S.C. § 5(a). While the organization must support itself from public donations and other sources, the United States does supply it with a permanent head-

---

**1.** *United States v. City of Spokane,* 734 F.Supp.     919 (E.D.Wash.1989).

quarters building. 36 U.S.C. § 13. The financial reports of the organization are audited by the Department of Defense. 36 U.S.C. § 6.

The Inland Northwest Chapter of the American National Red Cross has been a chartered local organization since 1914. As such it is a local unit of the American National Red Cross. 36 U.S.C. § 4a. We will hereafter refer to the American National Red Cross as the "Red Cross" and the Chapter as the "INC". However, since the INC is a unit of the Red Cross, what we say about the rights and duties of the Red Cross also applies to the INC.

The State of Washington authorizes bona fide charitable or non-profit organizations to conduct bingo, pull-tab, and punchboard games. Wash.Rev.Code § 9.46.0311 (1988).[2] The Red Cross is an organization that comes within that definition. Wash. Rev.Code § 9.46.0209. At the same time, the State of Washington authorizes cities to tax certain of the proceeds of those gambling activities—Wash.Rev.Code § 9.46.110—and since 1982 the City has levied a gambling tax upon the INC. Spokane, Wash.Ord. § 8.40.020 (1982).

For some time, the INC paid that tax without apparent protest, but in February of 1986 it did protest and requested a refund of all gambling taxes paid since July 1, 1980. The request was denied. The United States then brought this action to obtain the refund, with interest, and to enjoin any further levies.

Cross motions for summary judgment were filed, and the district court ultimately entered a judgment which required the disgorgement of prior exactions by the City, together with prejudgment interest from the date of the demand for refund. The district court further directed that the City cease further imposition of the tax. This appeal followed.

### JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

**2.** The citations to the Washington Code are to the current version of that law. Earlier ver-

▮ We review the grant of summary judgment de novo. *Kruso v. International Tel. & Tel.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). On constitutional questions, this court reviews findings of fact for clear error, and mixed questions of fact and law de novo. *State of Nevada Employees Ass'n Inc. v. Keating*, 903 F.2d 1223, 1226 (9th Cir.1990); *La Duke v. Nelson*, 762 F.2d 1318, 1322 (1985), *modified*, 796 F.2d 309 (9th Cir.1986). Questions of law are reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### DISCUSSION

Two major issues confront us. First, is the Red Cross an instrumentality of the United States which is immune from this kind of taxation? Second, if it is, should the INC have been granted a refund of the back taxes? We will discuss each of these issues in turn.

### A. *The Red Cross Is Immune from This Tax*

▮ One of the hoariest principles of federal-state governmental relations is that no state can impose a tax upon an instrumentality of the United States Government. As the Supreme Court, speaking through Chief Justice Marshall, eloquently stated in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 431, 4 L.Ed. 579 (1819), that principle is bottomed upon certain important axioms:

That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is

sions were to the same effect, as far as the issues on this appeal are concerned.

declared to be supreme over that which exerts the control, are propositions not to be denied.

Nor can it be said that a little taxation, or taxation of just one function or instrumentality, is proper. *M'Culloch* also dealt with those possibilities. The Court said:

> We are not driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power. The attempt to use it on the means employed by the government of the Union, in pursuance of the constitution, is itself an abuse, because it is the usurpation of a power which the people of a single state cannot give.

*M'Culloch*, 17 U.S. (4 Wheat.) at 430. The Court continued:

> If the states may tax one instrument, employed by the government in the execution of its powers, they may tax any and every other instrument. They may tax the mail; they may tax the mint; they may tax patent-rights; they may tax the papers of the custom-house; they may tax judicial process; they may tax all the means employed by the government, to an excess which would defeat all the ends of government. This was not intended by the American people. They did not design to make their government dependent on the states.

*M'Culloch*, 17 U.S. (4 Wheat.) at 432.

Nothing could be more forcefully established, and while those principles alone do not demonstrate that the Red Cross *is* an instrumentality of the United States, there can be no doubt that it is. The Supreme Court made that clear in *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966) where it said, "[W]e hold that the Red Cross is an instrumentality of the United States for purposes of immunity from state taxation levied on its operations, and that this immunity has not been waived by congressional enactment."

At first blush that would appear to dispose of this issue, but the City claims that accretions to the *M'Culloch* doctrine make it inapplicable to the INC activities which were taxed here. That claim is based upon a misreading of the authorities.

The City first points to *Federal Land Bank v. Board of County Comm'rs*, 368 U.S. 146, 82 S.Ct. 282, 7 L.Ed.2d 199 (1961), a case in which the Supreme Court struck down a tax levy on the Federal Land Bank, an instrumentality of the United States. In so doing, the Court indicated that if the activity being performed is not within the authority granted to the instrumentality, for example if it were illegal, taxation may be appropriate. *Federal Land Bank*, 368 U.S. at 152–56, 82 S.Ct. at 287–89. That, however, has no application whatever to this case. There can be no doubt that the Red Cross can engage in activities designed to earn money. In fact, because it is not, for the most part, funded with tax dollars, it must engage in many fund raising activities if it is to survive. While we do not suggest that the Red Cross can engage in illegal activities in pursuit of its goals, there is nothing illegal about the gambling activities the INC engaged in here.

But the City claims that there is still another string to its bow, for some activities of agencies of the United States can be taxed. Here again, when gazing upon the authorities cited one must be purblind if one is to overlook the distinctions between those authorities and this case.

Thus, in *James v. Dravo Contracting Co.*, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937), a private independent corporation that had contracts with the United States complained about the taxation of its gross receipts. The Court declined to find that a tax on the private entity was a tax upon the government or its instrumentalities, even though the effect of the tax could, in theory, be felt by the government. *James*, 302 U.S. at 161, 58 S.Ct. at 221. That is not this case; the Red Cross is no mere private contractor, it is a United States instrumentality. The same analysis applies to *United States v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982). There, too, a tax on the receipts of private contractors was attacked; there, too, the tax was sustained. The Court indicated

that the mere fact that a contractor acts as an agent of the government does not mean that it is an agency or instrumentality of the government. It does not mean that the contractor stands in the government's shoes. 455 U.S. at 735–36, 102 S.Ct. at 1383. The entities in question were not so integrated into the structure of the government that its tax immunity devolved upon them. Rather, it was realistic to view them as the private entities they were—entities "independent of the United States." 455 U.S. at 738, 102 S.Ct. at 1385. When dealing with entities of that stripe, it is necessary to be extremely careful about parsing their various activities when they claim that a tax falls directly on the United States. The same does not apply when one is dealing with an acknowledged government instrumentality such as the Red Cross. To do so in that instance would engage the courts in the unfit inquiry that *M'Culloch* warned against. 17 U.S. (4 Wheat.) at 430. Private independent contractors may be agencies because they act as agents. They are not to be confused with instrumentalities like the Red Cross which are agencies because they were created to carry out functions of the government itself and are, therefore, imbedded in the structure of the government to that extent.[3] As the Supreme Court has said, "both the President and Congress have recognized and acted in reliance upon the Red Cross' status virtually as an arm of the Government." *Department of Employment*, 385 U.S. at 359–60, 87 S.Ct. at 467. The Court agreed with that characterization.

In a final bid to deflect the inexorable force of the law in this area, the City asserts that the Red Cross is not really a tax exempt instrumentality of the government, because we have said that it is not an agency for the purposes of the Freedom of Information Act. *See Irwin Memorial Blood Bank v. American Nat'l Red Cross*, 640 F.2d 1051, 1057 (9th Cir.1981). That is an astonishing proposition. It suggests

that we, in effect, overturned *Department of Employment* when we decided *Irwin Memorial Blood Bank*. We did no such thing. What we did decide was that given the purposes and the background of the Freedom of Information Act, the Red Cross was not an agency within the meaning of that statute. To extrapolate from that holding to the area of the law which we must deal with here would be a serious logical and semantic error. It would insist that an entity incorporated by an act of Congress to carry out essentially public functions is not exempt from taxation as it struggles to accomplish those purposes. It would insist upon that even when the entity's activities are lawful, necessary and in pursuit of its duties as an instrumentality of the United States. It would insist upon that based on the fallacy that a word which has a meaning in one context must have the selfsame meaning when transplanted to an entirely different context. We must eschew that extrapolation.

It follows that the City improperly imposed the gambling tax upon INC.

### B. *The City Must Disgorge the Taxes It Collected*

The City asserts that even if the tax is invalid, it should not be required to reimburse the INC for the taxes which have already been collected. Discussion of that claim requires analysis of two sub-issues. Should the decision here be given retroactive effect, and, if so, what remedy is proper?

While the issues sometimes seem to be entangled, the Supreme Court has recently been at some pains to untangle them. *See American Trucking Ass'ns, Inc. v. Smith*, —— U.S. ——, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990). In *American Trucking*, the Court pointed out that retroactivity must be decided by use of the analysis outlined in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). That does not, however, answer the remedy

---

**3.** *California State Bd. of Equalization v. Sierra Summit, Inc.,* 490 U.S. 844, 109 S.Ct. 2228, 104 L.Ed.2d 910 (1989), and *Washington v. United States,* 460 U.S. 536, 103 S.Ct. 1344, 75 L.Ed.2d

264 (1983), which also uphold taxation of a bankruptcy trustee's sales and private construction contractors' income, respectively, apply the same principles and are to the same effect.

question, a question usually left to the states themselves to work out. *American Trucking,* 110 S.Ct. at 2330. *See also Probe v. State Teachers' Retirement Sys.,* 780 F.2d 776, 782–84 (9th Cir.), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986), where we, in effect, recognized and applied the distinctions.

■ Because we need not consider the question of remedy if the effect of our decision is not retroactive, we will first consider retroactivity.[4]

Our retroactivity analysis must apply the three-part *Chevron Oil* test:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision ... could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

Our decision striking down this tax does not meet the tests of nonretroactivity. We overrule no precedent here and we do not decide an issue of first impression. As we have shown, our determination regarding the status of the Red Cross does not proceed from some obscure and half-formed idea only now wrested into the light of day. Rather, it proceeds from a long, if sometimes wavy, line of Supreme Court authority. This alone indicates that retroactivity is required. *See Ashland Oil, Inc. v. Caryl,* — U.S. —, 110 S.Ct. 3202, 3205, 111 L.Ed.2d 734 (1990) (per curiam). However, we will also look to the other elements. We are dealing with a fundamental principle that precludes the taxation of United States governmental functions. Retroactive operation of our decision will surely foster a proper respect for that principle by encouraging local entities to tread carefully when they impose taxes on entities like the Red Cross. Finally, no inequity results from retroactive application. It is true that the City may already have used the tax money, but at the very least it should have entertained the gravest doubts about its right to collect the tax in the first place. Against that is the inequity to the INC which would be wrought were it forced to forego its claim to recover.[5] Therefore, this decision will apply retroactively.

■ We turn then to the question of relief. That the INC is entitled to relief can hardly be questioned. It is true that the exact form of relief is often left to the local governmental entity when a tax is struck down as unconstitutional. However, that is typically done in cases where there is a commerce clause violation which can be remedied in any one of a number of ways. *See, e.g., Ashland Oil,* 110 S.Ct. at 3205; *American Trucking,* 110 S.Ct. at 2330; *McKesson Corp.,* 110 S.Ct. at 2252. That approach has no application here, for here, purely and simply, a tax has been exacted from a federal instrumentality. The only logical relief, aside from precluding further taxation, is to order the improperly taken monies refunded. That was the course adopted in *Department of Employment,* 385 U.S. at 357, 87 S.Ct. at 466. It is the course the district court adopted; it is the course we adopt today.

---

4. There is much jurisprudential debate about the propriety of any such analysis in the area of the constitution. *See American Trucking,* 110 S.Ct. at 2343 (Scalia, J., concurring). We, of course, cannot enter the arena. We leave the battle to other gladiators.

5. There is no assertion that this action is barred by the statute of limitations. Nor is there a claim that payment under protest was required by Washington law. *Cf. McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* — U.S. —, 110 S.Ct. 2238, 2243–44 n. 4, 110 L.Ed.2d 17 (1990).

**90**

### CONCLUSION

The Red Cross is a United States Government instrumentality which is immune from state and local taxation when it is lawfully pursuing its mandated purposes. Here, the INC was engaged in fundraising by lawfully conducting certain gambling activities. The City erred when it levied a tax on those activities.

Thus, the City must cease making that levy and must refund back taxes paid by the INC since November 21, 1982, together with interest from February 28, 1986, the date that the INC made its demand.

AFFIRMED.