Herbert Ray HALL, Plaintiff–Appellant,

v.

AMERICAN NATIONAL RED CROSS,
a Federal corporation, Defendant–
Appellee.

No. 95–56468.

United States Court of Appeals,
Ninth Circuit.

Submitted June 4, 1996.*

Decided June 18, 1996.

James A. Hayes, Jr., Laguna Niguel, California, for plaintiff-appellant.

Teresa A. Beaudet, Jerome M. Jauffret, Nina E. Scholtz, Mayer, Brown & Platt, Los Angeles, California, for defendant-appellee.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Before: FARRIS, FERNANDEZ and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

The question presented in this case is whether the American National Red Cross ("Red Cross") is an instrumentality of the United States subject to the Religious Freedom Restoration Act. We conclude that it is not and affirm dismissal of the complaint.

## Background

According to his complaint, Herbert Ray Hall ("Hall") applied to be a Red Cross-certified HIV/AIDS instructor. He informed Susan Sullivan, the Orange County Chapter Red Cross AIDS Education Coordinator, that he was HIV-positive and a member of Naamen's Fellowship, a Christian ministry. Coordinator Sullivan informed Hall he "would have to take off [his] religious hat and be able to put on the hat of the American Red Cross" in order to be certified. Hall told Sullivan the restriction did not pose any difficulty. Sullivan expressed reservations, but placed Hall on a waiting list for an HIV/AIDS instructor certification class.

Hall completed the certification class and passed all required written and practical examinations. He was then informed by Sullivan the Red Cross was not going to certify him as an instructor because Sullivan did not believe he could separate his religious convictions from his Red Cross duties. In response to Hall's threatened legal action, she offered "conditional certification" to be based upon monitoring of his speaking engagements for religious content. Hall declined the offer because "this was not done for anyone else in the class" and he "would not tolerate religious discrimination" by the Red Cross.

Hall filed this action alleging, *inter alia,* that the Red Cross violated the Religious Freedom Restoration Act ("RFRA" or "the Act"). The District Court dismissed Hall's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). He appeals only the dismissal of the RFRA claim.

## Analysis

■ Hall claims the Red Cross is an instrumentality of the United States under the Act which burdened his free exercise of religion by refusing to certify him as an HIV/AIDS instructor because of his religious beliefs. Without reaching the other issues presented, we find the Red Cross is not subject to the Act and affirm the district court's dismissal.

■ We review dismissal for failure to state a claim *de novo. Oscar v. University Students Co-operative Ass'n,* 965 F.2d 783, 785 (9th Cir.1992).

In 1993, Congress passed RFRA in reaction to *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). The purposes of the Act are:

(1) to restore the compelling interest test as set forth in *Sherbert v. Verner,* 374 U.S. 398 [83 S.Ct. 1790, 10 L.Ed.2d 965] (1963) and *Wisconsin v. Yoder,* 406 U.S. 205 [92 S.Ct. 1526, 32 L.Ed.2d 15] (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

(2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

42 U.S.C. § 2000bb(b).

To meet these purposes, the Act provides in relevant part:

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

42 U.S.C. § 2000bb–1(a).

The Act creates a judicial remedy:

A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

42 U.S.C. § 2000bb–1(c).

Under the Act, the term "government" includes "a branch, department, agency, *instrumentality,* and official (or other person

acting under color of law) of the United States, a State, or a subdivision of a State." 42 U.S.C. § 2000bb–2 (emphasis supplied). The term "instrumentality" is not defined in the Act, nor is its definition discussed in the legislative history.

■ We find that Congress did not intend the Act to create a broader class of government actors than previously existed under the Free Exercise Clause of the First Amendment. As the Senate Judiciary Committee stated in its report on the Act:

> To be absolutely clear, the act does not expand, contract or alter the ability of a claimant to obtain relief in a manner consistent with the Supreme Courts's [sic] free exercise jurisprudence under the compelling government interest test prior to Smith.

S.Rep. No. 111, 103d Cong., 1st Sess. 12 (1993), U.S. Code Cong. & Admin. News 1993 at 1892, 1901.

■ Given the strong Congressional intent not to expand the class of government actors, why did Congress use the word "instrumentality" in the Act? The probable reason is that courts sometimes use the phrase "agency or instrumentality" when they are actually asking whether a particular institution is part of the government itself. *See, e.g., Lebron v. National R.R. Passenger Corp.,* —— U.S. ——, ——, 115 S.Ct. 961, 972, 130 L.Ed.2d 902 (1995). Because the language used by courts to refer to entities which are actually part of the government itself is not always precise, Congress's incorporation of words which are sometimes used to refer to those entities simply indicates a desire to encompass all parts of the government itself within the Act. Thus, the use of the word "instrumentality" in a general, inclusionary definition does not indicate an intention to encompass entities which are not a part of the government, even though they may be governmental "instrumentalities" in some sense.

■ Hall attaches special importance to the fact that a version of RFRA introduced in a prior session of Congress contained a different definition of "government" which did not include the word "instrumentality." The two definitions are not so markedly dif-

ferent as to evidence any special Congressional intent. Moreover, legislative history of one act cannot be transferred to a second and similar act. *Westlands Water Dist. v. Nat'l Resources Defense Council,* 43 F.3d 457, 462 (9th Cir.1994).

■ Thus, we must consider the status of the Red Cross under a First Amendment analysis to determine RFRA liability. Traditionally, otherwise private entities are considered government actors under the First Amendment if they have a sufficient structural or functional nexus to the government. Under a "structural" analysis, or "government entity" test, a corporation created by special law is part of the government for the purposes of the First Amendment (1) when the corporation is created for the furtherance of governmental objectives and (2) when government retains for itself permanent authority to appoint the majority of directors of the corporation. *Lebron,* —— U.S. at ——, 115 S.Ct. at 974–75; *see American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.,* 75 F.3d 1401, 1406 (9th Cir. 1996).

The first part of the *Lebron* test is satisfied in this case. The Red Cross originated as a private corporation, organized under the laws of the District of Columbia in 1881. Wesley A. Sturgis, *The Legal Status of the Red Cross,* 56 Mich.L.Rev. 1, 10 (1957). Congress reincorporated the Red Cross in 1905 because "the importance of the work demands a repeal of the present charter and a reincorporation of the society under Government supervision...." 33 Stat. 599. The major purposes of the Red Cross include furnishing "volunteer aid to the sick and wounded of the Armed Forces in time of war;" acting as a "medium of communication between the people of the United States of America and their Armed Forces;" providing a "system of national and international relief in times of peace;" and using the system in "mitigating the sufferings caused by pestilence, famine, fire, floods and other great national calamities." 36 U.S.C. § 3. Clearly, congressional creation of the Red Cross furthered government objectives.

However, the second prong of the *Lebron* test is not satisfied in this case. The Red

Cross Board of Governors consists of fifty persons. 36 U.S.C. § 5. Eight of the governors are appointed by the President of the United States; the remaining forty-two are selected by local Red Cross chapters and by the Board of Governors itself. 36 U.S.C. § 5. The daily affairs of the Red Cross are not controlled by government officials. *Irwin Memorial Blood Bank v. American Nat'l Red Cross,* 640 F.2d 1051, 1056 (9th Cir. 1981). Because the government has not retained permanent authority to appoint the majority of the Red Cross governing board, the Red Cross is not a government actor under the *Lebron* structural analysis of government chartered corporations. *See also American Bankers Mortgage,* 75 F.3d at 1409 (holding that the Federal Home Loan Mortgage Corp. did not meet the "government entity" test because less than one-third of its directors were appointed by the government).

Similarly, the Red Cross cannot be considered a government actor under a functional analysis. A "functional" analysis, or "federal action" test, examines whether the organization's activity constitutes federal action considering (1) the nexus between the government and the challenged action, (2) whether the alleged government actor performed functions traditionally reserved to the government, and (3) whether the government coerced or encouraged the challenged action. *American Bankers Mortgage,* 75 F.3d at 1409 (citing *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* 483 U.S. 522, 543–546, 107 S.Ct. 2971, 2984–86, 97 L.Ed.2d 427 (1987)).

In this case, Hall has not alleged any nexus between the government's involvement with the Red Cross and the Red Cross's decision not to certify Hall as an instructor. In conducting the instructor certification program, the Red Cross was not performing a function traditionally reserved for the government. Hall does not allege that the government coerced or encouraged the Red Cross not to certify him. Absent such participation or coercion, Hall has not established the requisite federal action even if, as Hall alleges, the HIV/AIDS education program is at least partially government funded.

*See Blum v. Yaretsky,* 457 U.S. 991, 1010–11, 102 S.Ct. 2777, 2788–89, 73 L.Ed.2d 534 (1982); *San Francisco Arts,* 483 U.S. at 544, 107 S.Ct. at 2985. Thus, the Red Cross cannot be considered a government actor under the facts of this case under a "functional" or "federal action" analysis.

■ Hall correctly points out that the Red Cross has been considered a government instrumentality in tax immunity cases. *Department of Employment v. United States,* 385 U.S. 355, 359–60, 87 S.Ct. 464, 467–68, 17 L.Ed.2d 414 (1966); *United States v. City of Spokane,* 918 F.2d 84, 88 (9th Cir.1990). However, this fact is not dispositive of the issues presented here. The question of whether a corporation is performing sufficient secondary or derivative government functions to be shielded from state taxation under *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316 (1819) is a far different question from whether it is subject to a constitutional restriction against burdening free exercise of religion. Indeed, specifically concerning the Red Cross, we explicitly rejected the argument that the meaning of "instrumentality" for intergovernmental tax immunity purposes could be equated to the meaning of a government "instrumentality" in other contexts. *City of Spokane,* 918 F.2d at 88. We termed this a "serious logical and semantic error .... based on the fallacy that a word which has a meaning in one context must have the selfsame meaning when transplanted into an entirely different context." *Id.*

Government-created corporations are often held to be tax-immune government instrumentalities, but courts have also frequently found them not to be subject to constitutional treatment as government actors. *Compare United States v. Michigan,* 851 F.2d 803, 805 (6th Cir.1988) (holding federal credit unions to be government instrumentalities immune from state taxation) *with Jesinger v. Federal Credit Union,* 24 F.3d 1127, 1132 (9th Cir. 1994) (holding a federal credit union not to be a government actor for Constitutional purposes). As with many other government-chartered corporations, the legal status of the Red Cross has varied depending on the context in which it has been examined. For example, in contrast to the tax immunity

decisions, we have held the Red Cross *not* to be a government agency subject to the Freedom of Information Act. *Irwin Memorial,* 640 F.2d at 1057. Similarly, the Third Circuit has held the Red Cross not to be a government entity immune to trial by jury. *Marcella v. Brandywine Hosp.,* 47 F.3d 618, 624 (3d Cir.1995).

In the case of the Red Cross, part of the seeming contradiction is due to the very nature of the corporation. While the Red Cross performs many important functions for the United States, "[a] perception that the organization is independent and neutral is equally vital." *Marcella,* 47 F.3d at 621. Political autonomy was a prerequisite for recognition of the Red Cross as a National Society by the Red Cross International Committee. *Irwin Memorial,* 640 F.2d at 1057. In order to fulfill its role under the Geneva Convention, the Red Cross must be independent of the United States government. *Marcella,* 47 F.3d at 624. Thus, to fulfill its chartered purpose, the Red Cross must perform functions for the United States while remaining an independent and autonomous organization. This dual role makes it appropriate for the courts to extend the shield of sovereign immunity to some Red Cross activities, but improper to impose constitutional restrictions on others.

Here, we are limited to examining the status of the Red Cross under the Free Exercise Clause of the First Amendment in its function of certifying HIV/AIDS instructors. In this context, the result is clear. Red Cross employees and volunteers are not employees of the federal government. *Marcella,* 47 F.3d at 622. The United States does not provide civil service benefits to Red Cross employees or volunteers. *Id.* at 624. Given these circumstances, we decline to extend the restrictions of the Free Exercise Clause to a privately managed HIV/AIDS instruction certification program.

Because the Red Cross is not a government actor under the First Amendment, we find that the Red Cross is not subject to the Religious Freedom Restoration Act. Accordingly, it is not necessary to reach the other issues raised by Hall, nor to judge the appropriateness of the Red Cross's actions here. The district court's dismissal of Hall's amended complaint is AFFIRMED.