GRIFFITH, Circuit Judge,
concurring in part and dissenting in part.
Although the Federal Aviation Administration (“FAA”) has conceded that the plan it screened, studied, chose, modified, and approved would substantially burden petitioners’ religious exercise, the majority nevertheless concludes that the FAA’s involvement in the relocation of St. Johannes Cemetery is “peripheral” and “not sufficient to hold the agency responsible for purposes of RFRA [the Religious Freedom Restoration Act].” Maj. Op at 64-65. The majority reaches this result after an extensive analysis of cases addressing when a party may be treated as a state actor. The majority presses these “state action” cases into service to determine that a federal agency need not consider an individual’s free exercise rights under RFRA even though it is extensively involved in a state or local project. See Maj. Op. at 62-63 (citing Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 834-35 (9th Cir.1999) and Hall v. Am. Nat’l Red Cross, 86 F.3d 919, 921 (9th Cir.1996)).
RFRA, however, requires an altogether different analysis. By its plain terms, RFRA mandates that we use the free exercise jurisprudence decided before Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), to determine whether the FAA’s actions burden religious exercise. See 42 U.S.C. § 2000bb(a)(4)-(5), (b)(1).[1] These cases es *74 tablish that free exercise rights may be violated where the federal government directly — or indirectly — burdens religious exercise. Although the majority’s approach may have some value where a petitioner attempts to bring a non-federal entity within reach of RFRA — as was the case in Sutton, where an employee brought a RFRA claim against a private hospital, and Hall, where an employee brought a RFRA claim against the Red Cross — petitioners here have not brought suit against the City of Chicago or any other non-federal entity. Petitioners do not claim that the City of Chicago is “subject to suit under” RFRA because its “alleged infringement of federal rights [is] fairly attributable to the [FAA],” Sutton, 192 F.3d at 835, or that the City of Chicago should be “considered [a] government actor[ ] under the First Amendment” because it has “a sufficient structural or functional nexus to the [FAA],” Hall, 86 F.3d at 921. Rather, petitioners challenge actual and concrete action by the FAA. See Pet’s Br. at 9 (“This case involves challenges to two separate and distinct FAA decisions.”).
RFRA’s substantial reach encompasses both the FAA, see 42 U.S.C. § 2000bb-2(l) (RFRA applies to an “agency ... of the United States”), and its required involvement with the Airport Layout Plan under the Airport and Airway Improvement Act, see id. § 2000bb-3(a) (RFRA “applies to all federal law, and the implementation of that law, whether statutory or otherwise”). Execution of this plan requires the reloeation of St. Johannes Cemetery, which the FAA concedes will substantially burden petitioners’ religious exercise. Despite the FAA’s concession, the majority contends that the FAA is not the “source” of that substantial burden. See Maj. Op. at 61.
Where the party being challenged is the federal government and the action at issue is the implementation of federal law, RFRA itself tells us how to determine if the federal government has burdened religious exercise: “the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).” 42 U.S.C. § 2000bb(b)(l). As the majority acknowledges, we must turn to pre-Smith free exercise cases to apply RFRA. See Maj. Op. at 61-62 (“RFRA was not meant to ‘expand, contract or alter the ability of a claimant to obtain relief in a manner consistent with the Supreme Court’s free exercise jurisprudence under the compelling governmental interest test prior to Smith.’ ”) (quoting S.Rep. No. 103-111, at 12, as reprinted in 1993 U.S.C.C.A.N. at 1901). This is the very approach taken by our Court and other courts. See, e.g., Henderson v. Kennedy, 253 F.3d 12, 17 (D.C.Cir.2001) (“[t]o our court, ‘substantial burden’ in RFRA is what the Supreme Court had in mind in its pre-Smith opinion in [Jimmy Swaggart Ministries v. Bd. of Equalization, 493 U.S. 378, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990) ]”); Droz v. C.I.R., *75 48 F.3d 1120, 1122 n. 2 (9th Cir.1995) (“[b]ecause the RFRA restored the test used to consider free exercise challenges before Smith, we rely on pre-Smith decisions under the Free Exercise Clause”).
I am aware of no decision by the Supreme Court or this Court that has declined to apply a free exercise analysis to a government actor extensively involved in the restraint of religious exercise. Indeed, in Sherbert, the landmark case that created the compelling interest test RFRA requires us to follow here, the Supreme Court held even indirect burdens by government can implicate the Free Exercise Clause:
We turn first to the question whether the disqualification for benefits imposes any burden on the free exercise of appellant’s religion. We think it is clear that it does.... For ‘if the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect.’
Id. at 403-404, 83 S.Ct. 1790 (quoting Braunfeld v. Brown, 366 U.S. 599, 607, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961)) (emphasis added; footnote and alteration omitted); see United Christian Scientists v. First Church of Christ, Scientist, 829 F.2d 1152, 1166 n. 67 (D.C.Cir.1987) (“Government is permitted, and at times required, to accommodate religious practice when government itself, directly or indirectly, places a burden on religious exercise.”) (citations omitted and emphasis added). As the majority concedes, Sherbert and the pre-Smith cases “tell us that ... the government was not free to burden religious exercise through less direct restraints than criminal sanctions or fines.” Maj. Op. at 63 n.3.
Indeed, both the Supreme Court and this Court held, prior to Smith, that a federal agency’s approval can be the “source,” see Maj. Op. at 61, of a burden on religious exercise. In Lyng v. Northwest Indian Cemetery Protective Ass’n, 485 U.S. 439, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988), the Supreme Court applied the Free Exercise Clause to the U.S. Forest Service’s authorization of third party commercial logging and road projects in areas allegedly sacred to a Native American tribe. Id. at 451, 108 S.Ct. 1319. The Court did not hesitate to find that the Forest Service’s approval of commercial logging caused harm to plaintiffs’ religious exercise, id. at 447, 451, 108 S.Ct. 1319. The Court stated that “the Government’s proposed action will have severe effect on the practice of [plaintiffs’] religion,” id. at 447, 108 S.Ct. 1319 (emphasis added). The Court found, however, that this burden did not trigger strict scrutiny because it neither coerced plaintiffs into violating their religious beliefs nor penalized them for their religious exercise, id. at 449, 108 S.Ct. 1319.
In Wilson v. Block, 708 F.2d 735 (D.C.Cir.1983), cert. denied, 464 U.S. 1056, 104 S.Ct. 739, 79 L.Ed.2d 197 (1983), we scrutinized the Forest Service’s decision to grant a permit to private interests seeking to expand and develop a ski area. Plaintiffs filed suit and alleged that the proposed development would burden their religious exercise by impairing “their ability to gather sacred objects and conduct ceremonies.” Id. at 740. We concluded that the Forest Service, in granting a permit for private development, was responsible for the alleged burden on religious exercise. See id. at 742 (the “construction approved by the Secretary is, indeed, inconsistent with the plaintiffs’ beliefs, and will cause the plaintiffs spiritual disquiet”). We ultimately found, however, that “such *76 consequences [did] not state a free exercise claim,” id. at 742, because they were insufficient to trigger strict scrutiny, id. at 745.
Because the federal agency action in both Lyng and Wilson consisted of approval of third party action, the inescapable conclusion is that both the Supreme Court and this Court have found such action to be the “source” of a burden on religious exercise. That is, approval by a federal agency of third party action can be subject to a free exercise challenge.
Thus I cannot accept the majority’s premise that the FAA’s conduct here does not impose the type of burden on petitioners’ religious exercise that RFRA was enacted to address, especially considering that the FAA’s actions go beyond the mere approval found sufficient in Lyng and Wilson. The FAA initially “screened” fifteen alternative development proposals, Resp.’s Br. at 8, eventually selecting four alternatives “for more intensive study,” id. at 11. The FAA, in its own words, then “conducted extensive public outreach and coordination with other governmental and non-governmental entities,” id., and an “intensive, nine-month review” that involved over one-hundred modeling experiments, id. at 13. From the four remaining alternatives, one of which did not require the relocation of St. Johannes Cemetery, the FAA, as stated in its brief, “chose Alternative C as its preferred alternative” — an alternative that required the relocation of not only St. Johannes but also Rest Haven, another nearby cemetery, id. at 14-15 (emphasis added). The FAA then “examined” thirteen additional alternative proposals — eight submitted by petitioners and five created by the FAA itself — that would “avoid or minimize the effects” on the cemeteries, id. at 15-16. The FAA rejected all of these alternatives and instead, as recited in its brief, “issued a proposed resolution that would modify Alternative C so that only St. Johannes but not Rest Haven would have to be relocated,” id. at 17 (emphasis added). Accepting its own modification, the FAA approved this new version of Alternative C in a 492-page Record of Decision. Id. at 19. Thus, by its own admission, the FAA screened, studied, chose, modified, and eventually approved the plan to relocate St. Johannes Cemetery. Contrary to the majority’s suggestion, the FAA’s involvement here can hardly be said to be “mere approval or acquiescence” in another actor’s decisions, Maj. Op. at 66.
The FAA’s requirement that St. Johannes Cemetery be relocated in order for the project to go forward causes a burden on religious exercise just as surely as the denial of benefits in Sherbert, 374 U.S. at 403-404, 83 S.Ct. 1790, the approval of commercial logging in Lyng, 485 U.S. at 447, 451, 108 S.Ct. 1319, and the approval of private development in Wilson, 708 F.2d at 742. The FAA’s extensive involvement in the plan to relocate St. Johannes Cemetery would not have escaped the reach of the Free Exercise Clause before Smith and should not escape the reach of RFRA now.
The majority claims that this approach is “unbounded” and would mean that an “individual] whose religious exercise [is] burdened by private parties” would “grasp[ ] for a federal decision somewhere in the vicinity [she] could deem to be the ‘indirect’ cause of the burden” and that “every federal licensee would become the state for purposes of RFRA, as the government through its inaction granted ‘approval’ to their decisions.” Maj. Op. at 63-64 n. 4. The “unbounded approach” the majority decries is a straw man of its own making, stuffed and dressed and tied together with hypothetical scenarios that may justifiably raise alarms in other set *77 tings, but not here, not on the facts of this case. Here, the federal government was intensely involved in the plan to relocate St. Johannes Cemetery. That involvement was not a mere “federal decision somewhere in the vicinity” nor was it “the government through its inaction granting] ‘approval’.” The FAA approved a plan that it had screened, studied, chose, and modified — a plan that it concedes substantially burdens petitioners’ religious exercise. Such actions, no less than the actions by the Government in pre-Smith cases, entitle petitioners to the protection of RFRA and require us to review the FAA’s actions through the lens of strict scrutiny.
Under RFRA’s strict scrutiny test, the government must demonstrate a “compelling governmental interest,” and use the “least restrictive means” of furthering that interest. 42 U.S.C. § 2000bb-l(a), (b). Here, the FAA advances two compelling interests: delay reduction and increased capacity. The FAA claims that its “Preferred Alternative,” which requires the relocation of St. Johannes Cemetery, would produce the greatest delay reduction and increased capacity. Petitioners proffered several alternatives that they claim would achieve those same interests while saving St. Johannes Cemetery. For example, they argued that shifting one runway 350 feet would preserve the cemetery and still achieve the FAA’s objectives.
Under the demands of strict scrutiny, when “a plausible, least restrictive alternative is offered ..., it is the Government’s obligation to prove that the alternative will be ineffective to achieve its goals.” United States v. Playboy Entm’t Group, 529 U.S. 803, 816, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). “A governmental body that imposes a ‘substantial’ burden on a religious practice must demonstrate, and not just assert, that the [decision] at issue is the least restrictive means of achieving a compelling governmental interest.” O’Bryan v. Bureau of Prisons, 349 F.3d 399, 401 (7th Cir.2003).
The FAA offered only conclusory responses to petitioners’ proposed alternatives. The FAA, however, must “show with ... particularity how its admittedly strong interests] ... would be adversely affected by” the various alternatives that would spare St. Johannes Cemetery from relocation. See Yoder, 406 U.S. at 236, 92 S.Ct. 1526 (emphasis added). Without such a showing, we cannot determine if any of these alternatives are a less restrictive means of satisfying the FAA’s compelling interests. Thus, I would remand this case to the FAA to make such a showing.
Today, the majority holds that a federal agency’s intense involvement in a plan that substantially burdens religious exercise does not create a burden recognizable under RFRA. I find it difficult to reconcile this outcome with either the plain language of RFRA or the free exercise jurisprudence that guides its interpretation. In enacting RFRA, Congress intended to reach “all cases where free exercise of religion is substantially burdened” by the Federal Government, 42 U.S.C. § 2000bb(b)(l) (emphasis added), with the purpose of “restoring] the compelling interest test” established in Sherbert and Yoder, id. The majority’s holding today improperly narrows the reach and frustrates the purpose of RFRA. Accordingly, I respectfully dissent from Part II of the Court’s opinion but otherwise concur.

. Section 2000bb of Title 42, U.S.Code, provides:
(a) Findings. The Congress finds that—
sic * * * * *
(4) in Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d *74 876 (1990) the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion; and
(5) the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests.
(b) Purposes. The purposes of this chapter are^ — ■
(1) to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened ....